## CHAS. B. HENKEL vs. DAVID R. MILLARD ET AL.

*Registration of Pharmacists—Action of State Board of Pharmacy Not Reviewable by the Courts.*

The Act of 1902, ch. 179, created a State Board of Pharmacy and required all persons practicing pharmacy or conducting retail drug stores to be registered by the Board. In the case of applicants for registration who had not carried on a drug business for five years the Board was directed to grant certificates of registration after a technical examination of the applicant, but the Act directed that "any person who at the passage of this Act is actively engaged as owner or manager or is and has been so engaged as clerk for five years or more and has reached the age of twenty-one years in compounding drugs and dispensing physicians' prescriptions in one of the counties of this State, and who shall on or before the first day of July next forward to the Md. Board of Pharmacy

an affidavit to that effect together with a fee of one dollar shall be enti-
tled to registration as pharmacists and to a certificate of such registra-
tion.''

Plaintiff's bill in this case alleged that he was a member of the Board of
Pharmacy and that the other members of the Board, against his protest,
had issued a certificate of registration to a person as a pharmacist, with-
out an examination, who had not practiced pharmacy for five years and
was not duly qualified. The bill prayed for an injunction requiring
the Board to cancel this registration and prohibiting them from granting
such certificate to the person named. There was no allegation that the
Board acted corruptly or had neglected to consider whether the party
in question came within the description of the Act. *Held,* that the ac-
tion of the Board in the registration of applicants was not purely minis-
terial but required the exercise of judgment and discretion in ascertain-
ing whether an applicant was in fact entitled under the Act to registra-
tion without an examination, and that the exercise of this discretion by
the Board cannot be controlled by the Courts in this proceeding.

Appeal from the Circuit Court for Anne Arundel County
(JONES, C. J., REVELL and THOMAS, JJ.)

The cause was argued before McSHERRY, C. J., BRISCOE,
BOYD, PEARCE and SCHMUCKER, JJ.

*Isaac Lobe Straus,* for the appellant.

*J. Wirt Randall* and *Reuben C. Foster* (with whom was *A.
D. Foster* on the brief), for the appellees.

SCHMUCKER, J., delivered the opinion of the Court.

The appeal in this case is from a decree of the Circuit Court
for Anne Arundel county sustaining a demurrer to and dis-
missing a bill in equity filed by the appellant.

The purpose of the bill is to procure a mandatory and pro-
hibitory injunction against the Maryland Board of Pharmacy
to require them to rescind and cancel their proceedings under
the Act of 1902, chap. 179, in registering Charles G. Feld-
meyer as a Pharmacist and granting him a certificate of such
registration; and to prohibit them from hereafter so register-
ing him or granting him any such certificate. The bill also
prays that the registration and certificate already granted to
him be decreed by the Court to be illegal and void. The ap-

pellant is himself a member of the Board of Pharmacy, and he filed his bill in that capacity and also as a resident of Annapolis, against the other four members of the board and Feldmeyer.

In order to make clearer the discussion of the issue before us we will first call attention to the material portions of the Act of 1902 creating the Maryland Board of Pharmacy and prescribing its powers and duties. This Act is one of a comparatively recent class of statutes regulating the conditions upon which persons shall be permitted to pursue certain occupations. Its title declares its purpose to be to regulate the practice of pharmacy in Maryland. To carry out this legislative purpose the Act creates a board of skilled pharmacists and requires all persons, whether then in that business or intending to enter it, to apply to the board for registration as pharmacists, and such registration is made a condition precedent to the right to practice pharmacy in Maryland.

Sec. 2 of the Act provides that no person on or after July 1st, 1902, shall open, conduct or keep a pharmacy in this State either as principal or agent unless he shall have obtained a pharmacist's certificate as in the Act provided, and declares a violation of the Act to be a misdemeanor and prescribes a penalty therefor.

Sec. 3. Declares what species of stores shall be considered pharmacies among which are retail drug stores.

Sec. 4 of the Act directs the Governor to appoint "five persons who are skilled and competent pharmacists, who have had ten years active pharmaceutical experience, are actively engaged in the retail drug business and not connected with any school of pharmacy or medicine * * * to constitute the Maryland Board of Pharmacy," and directs them to qualify by taking an oath for the faithful discharge of the duties conferred upon them by the Act.

Sec. 5. Directs the board to organize, to fix the times and places for the examination of applicants for registration, and give ten days public notice of the same, and provides that "it shall be the duty of the board to receive all applications for

examination and registration submitted in proper form, to grant certificates to such persons as may be entitled to the same under this Act," &c., &c.

Sec. 8 provides "That any person who at the passage of this Act is actively engaged as owner or manager, or is and has been so engaged as clerk for five years or more and has reached the age of twenty-one years in compounding drugs and dispensing physicians' prescriptions in one of the counties of this State and who shall on or before the first day of July next following the passage of this Act forward to the Maryland Board of Pharmacy an affidavit to that effect together with a fee of one dollar shall be entitled to registration as pharmacists and to a certificate of such registration."

The subsequent sections of the Act provide that certain other persons therein described "who after examination by the Maryland Board of Pharmacy shall be by it deemed competent," shall also be registered as pharmacists and given certificates of such registration.

It is thus apparent that the Act authorizes the Board of Pharmacy to grant registration and certificates to two classes of persons and upon different terms, and imposes upon the board slightly different duties with reference to the respective classes of applicants.

They are required to grant the registration and certificate to an applicant answering to the description contained in sec. 8, when they have ascertained that he was at the passage of the Act twenty-one years of age and actively engaged as owner or manager in compounding drugs, &c., &c., and that he has forwarded to them an affidavit to that effect without any examination of him as to his professional competency. The law gives to that class of applicants the benefit of the presumption of professional competency arising from the fact that they are already in business as pharmacists. It however imposes upon the Board of Pharmacy the duty of determining that the applicant in fact answers to the description contained in sec. 8, because it does not authorize or direct them to grant him the registration and certificate merely upon his making the affidavit "to that effect."

The board are not required to grant the registration and certificate to any person of the other class unless after an examination of him they regard him as competent. The examination spoken of in that connection in the Act is manifestly intended to relate to his technical fitness to practice pharmacy.

The Act does not authorize the board to cancel or revoke a registration or certificate that has once been granted by them nor does it provide for an appeal from their action or decisions to any other body of persons or tribunal. The apparent purpose of the Legislature in that respect was to create in the board itself an agency composed of persons possessing the technical skill and experience requisite to the discharge of the duties committed to them and to let their action conclude the matters confided to them by the law.

The bill of complaint in the record now before us alleges the appointment and qualification of the appellant and his associates as the Board of Pharmacy, quotes certain portions of the Act of 1902 pertinent to the issue and then avers that on August 14th, 1902, the four appellee members of the Board of Pharmacy "constituting, acting and proceeding as said board" registered Feldmeyer as a pharmacist and granted him a certificate thereof without subjecting him to an examination or test as to his qualifications, against the protest and objection of the appellant. The bill charges that this action of the board was in violation of their powers and duties and therefore void because Feldmeyer, although a partner in the drug business of Feldmeyer Brothers conducted in the city of Annapolis and financially interested therein, was not at the passage of the Act of 1902 and never has been actively engaged as owner or manager in compounding drugs and dispensing physicians' prescriptions and was therefore "not eligible to be registered or awarded a certificate as pharmacist under said Act of 1902."

The bill abounds in charges that Feldmeyer is not acquainted with the nature and operation of noxious and poisonous drugs and is without education or skill as a pharmacist and sets out in strong terms the dangers to which the citizens

of Annapolis would be exposed if he were permitted to conduct a pharmacy at that place. We do not deem it necessary to further discuss the allegations of that kind contained in the bill because it is apparent on the face of the Act of 1902 that it does not require persons who were, at its passage already engaged in the drug business in the manner described in sec. 8, to submit to any examination as to their technical knowledge or skill to entitle them to registration and a certificate. As we have already said the Act gives to such persons the benefit of the presumption of the possession of the requisite qualifications for continuing in the business. The Legislature may also have considered the recognition of that presumption as but a reasonable concession to those persons who had already embarked their labor or capital in the occupation of pharmacists when the Act was passed.

According to the allegations of the bill, Feldmeyer forwarded to the Board of Pharmacy prior to July 1st, 1902, a written application signed by him and verified by his oath in the following form : " Maryland Board of Pharmacy. Gentlemen. I wish to make application for registration under secs. 8 and 10, chapter 179, General Law 1902. I am engaged as a pharmacist at Annapolis, Maryland, and have been so engaged for twelve years. Am forty-eight years old. Enclosed find fee $1.00."

He afterwards on August 4th, 1902, furnished to the board, at whose suggestion it is not alleged, a further sworn statement to the effect that he was, at the passage of the Act of 1902, part owner of the drug store conducted at Annapolis under the firm name of Feldmeyer Brothers and that he was and has been and still is actively engaged in compounding drugs and dispensing physicians' prescriptions in said city of Annapolis. Subsequently at a meeting held on August 14th, 1902, the board registered Feldmeyer and issued his certificate without, as the bill alleges, *subjecting him* to any examination or test as to his qualifications.

The bill nowhere alleges or even intimates that this action of the board was fraudulent or corrupt or that it proceeded

from improper motives of any kind or that the board neglected to consider and pass upon the fact that Feldmeyer answered to the description contained in sec. 8 of the Act and had complied with its conditions. In fact the bill inferentially alleges that they did actively consider and pass upon his qualifications because it avers that the appellant always opposed and protested against his registration.

· Without pausing to inquire whether, upon the case presented by the bill, the' appellant was entitled to institute this suit to contest the validity of Feldmeyer's registration, we pass to the consideration of the vital question whether the action of the Board of Pharmacy in his case as set out in the bill was reviewable at all by the Circuit Court. Although this is not a proceeding at law for a *mandamus* to compel the Board of Pharmacy to reverse its action in Feldmeyer's case and reject his application for registration as a pharmacist, it is an application in equity for a mandatory injunction to accomplish that purpose. We therefore think we should be governed by the former decisions of this Court upon applications to it to control either by *mandamus* or injunction the action of public officers or boards.

It is well settled in this State that although the Courts will, in a proper case, exercise their mandatory power to require a public official to perform a strictly ministerial act or to exercise a discretion conferred upon him by the law, they will not interfere with or control the method of the exercise of such discretion or of the performance of any duty requiring the exercise of judgment or discretion nor will they correct errors of judgment or discretion which have been honestly made in the discharge of such duty. *Brown* v. *Bragunier*, 79 Md. 236; *State* v. *Latrobe*, 81 Md. 233; *Wailes* v. *Smith*, 76 Md. 477; *Madison* v. *Harbor Board*, 76 Md. 395; *Wiley* v. *School Commrs.*, 51 Md. 404; *Alberger* v. *Mayor, &c.*, 64 Md. 6.

In *Wailes* v. *Smith, supra*, the Court, after again announcing the principle that the Courts will exercise their mandatory powers only to enforce the performance of a strictly ministerial duty, go on to say "And by 'ministerial' we mean where

one is entrusted with the performance of an absolute and *imperative duty* the discharge of which requires neither the exercise of official discretion nor judgment. As for instance where a specific sum of money is appropriated by law for the payment of a certain defined service rendered the State no one questions that in such a case the payment for such services by the proper officer may be enforced by *mandamus.* Where however the duty is one which necessarily requires the exercise of discretion and judgment it is well settled that *mandamus* will not lie to control or reverse the decision of one to whom the discharge of such duty is confided." Then, after referring to the conflict of opinion appearing in the cases as to what is a ministerial duty as distinguished from a discretionary one, the Court further say : "Be that as it may we take it to be settled by the best considered cases that where the duty is such as necessarily requires the examination of evidence and the decision of questions of law and fact such a duty is not ministerial and not being ministerial the decision of a public officer to whom the discharge of such duty has been confided cannot be reviewed or reversed in a *mandamus* proceeding.

"In the leading case of the *United States* v. *Seaman,* 17 How. 230, where the relator a printer to the United States Senate applied for a *mandamus* to compel the Superintendent of Public Printing to deliver to him certain public documents, the printing of which he claimed to be entitled to under an Act of Congress, Mr. CHIEF JUSTICE TANEY said: 'Now it is evident that this case is not one which the superintendent had nothing to do but to obey the order of a superior authority. * * * * He was therefore obliged to examine evidence and form judgment before he acted and, whenever that is to be done it is not a case for a *mandamus.*' And the rule thus laid down, was approved and adopted by this Court in *Green* v. *Purnell,* 12 Md. 329, where it was laid down that 'the Comptroller having the exclusive power under the Constitution of adjusting and settling public accounts was not a mere ministerial officer and could not therefore be compelled by *mandamus* to

perform any act in the discharge of his duties which involved the exercise of discretion and judgment.' "

Applying the principles thus laid down to the present case we are forced to the conclusion that the action of the Board of Pharmacy in Feldmeyer's case was not purely ministerial but that it required such use of judgment and discretion as to bring it within the category of the transactions which, when honestly made, are not reviewable by the Courts. Sec. 8 of the Act of 1902, under which the board evidently acted in this case, requires that the applicant shall be an adult and shall have been at the date of its passage actively engaged as owner or manager in compounding drugs, &c., &c., and that he shall make an affidavit "to that effect," before he is entitled to registration and a certificate. Other sections of the Act provide for the appointment of a board of "skilled and competent pharmacists" who are themselves "actively engaged in the retail drug business" to pass upon the fact of the applicant's answering to the description contained in sec. 8, and of his having made an affidavit *to that effect.* Surely the duties thus imposed upon the board are not *strictly* ministerial. Their discharge necessarily requires the examination into evidence and the exercise of judgment and discretion.

As it was neither alleged nor contended that the action of the board had not been taken in entire good faith the learned Judges below properly sustained the demurrer and dismissed the bill and their decree must be affirmed.

*Decree affirmed with costs.*

(Decided April 1st, 1903.)