## · CHARLESTON.

STATE *ex rel.* C. I. DODD *et als.* v. J. S. HILL, BANKING
COMMISSIONER.

Submitted September 10, 1919.    Decided September 16, 1919.

1. · BANKS AND BANKING—*Charter—Discretion of· Commissioner of
    Banking.* ·

     That part of section 78, ch. 54, Code, as amended in 1919,
    which provides that "hereafter no charter shall be issued to any
    bank to do business in this state until the application therefor has
    been approved in writing by the commissioner of banking," vests
    in such commissioner discretionary power to approve or reject
    such application. (p. 470).

2.   SAME—*Application for Charter—Discretion of Commissioner of
    Banking.*

     The refusal of the commissioner of banking to approve an ap-
    plication for a charter in a proper exercise of such discretionary
    power is not subject to judicial review on the ground that a dif-
    ferent decision should have been made, unless it clearly appears
    that he has wilfully and arbitrarily disregarded his duty, or that
    his decision was due to caprice, passion, partiality or corruption.
    (p. 470).

Mandamus by the State, on the relation of C. I. Dodd
and others, against J. S. Hill, Banking Commissioner, etc.

*Writ denied.*

*Henry S. Cato* and *Linn & Byrne,* for relators.
*McClintic, Mathews & Campbell,* for respondent.

LYNCH, JUDGE:

Guided by his own construction of section 78, ch. 54, Code,
as amended by chapter 21, Acts 1913, prescribing his auth-
ority as Commissioner of Banking, J. S. Hill declined to issue
a certificate of approval of the application of C. I. Dodd
and others for authority to establish a state bank at Elk
View in Elk district, Kanawha County, to be called and
known as Elk View Banking Company. To compel the issu-

ance of such certificate, petitioners applied to this court for and obtained an alternative writ requiring him either to comply with the writ forthwith or appear and show cause for not doing so. To the petition respondent appeared and demurred, moved to quash the writ, and filed his return, to which petitioners demurred.

Speaking as of the date at which the amendment of 1913 became effective, the legislature declared that ''hereafter no charter shall be issued to any bank to do business in this state until the application therefor has been approved in writing by the commissioner of banking.'' It is by virtue of this power that respondent seeks to justify his action in withholding the certificate without which no new state banking institution lawfully may open its doors for the transaction of business in this state.

As to the power of the legislature to enact a provision of this character there is no question raised, but the existence of the power is conceded, and nothing need be said upon that subject except to remark that while judicial decisions are not entirely in accord, the greater number uphold such or similar enactments as within the scope of the regulatory authority of the Congress and of the legislatures of the several states.

Respondent's return, petitioners say, is not sufficient to justify the withholding of the commissioner's approval of their preliminary application for the privilege of engaging in the banking business, and that upon such application the only duty he then was required to perform was to determine the formal sufficiency of the papers presented for examination and approval. The language of the statute does not so limit or circumscribe the powers it purports to confer upon the office thus created. Besides, there was no need to regrant such a right to test the legal sufficiency of such preliminary documents, as that right then belonged and still belongs to the office of the Secretary of State, and it is there that such a test is made.

Respondent in the return defends his action in part by showing like action by former occupants of the office in similar circumstances, and a virtual ratification or indorsement

of the construction given by him and them of the provisions of section 78 in this, that the legislature of 1919, presumably knowing and consenting to such construction, amended and re-enacted the section in other particulars but left intact the provisions so construed.

But granting the scope of the power to be as broad as the respondent says it is, petitioners claim that his action, nevertheless, was wholly unjustifiable and arbitrary, and that none of the reasons relied on to justify the rejection of their application were sufficient for that purpose. Before condemning as arbitrary and unreasonable the action of an officer charged with the performance of an important public duty, a court should carefully scrutinize the grounds assigned for so doing. Looking to these we find the only charge to be that the banking commissioner acted adversely upon the application on the day it was presented to him for approval. Promptness in the discharge of a public duty ordinarily is worthy of commendation rather than adverse criticism of the officer. It does not necessarily signify failure to give thoughtful consideration to the matters involved before determining what action a proper discharge of his duty required him to take. Besides, according to his return, he "seriously considered all questions connected with the location of said bank and reached the conclusion that from a banking standpoint a bank was not needed at such place, and would not be able to be of any value to the stockholders, or any real value to the people of that community; that respondent was of opinion that the territory in a commercial sense tributary to said Elkview would be very small and was not sufficient to properly support a bank and enable that bank to pay the heavy expenses connected with the operation thereof and make any returns to the stockholders, and respondent's experience has been that unless a bank can make sufficient money for such purposes it is of no value to the public, and in many instances has been really menaces to the interests of the community.

"Respondent further says that in view of late events in one section of West Virginia it can be better appreciated that there is a grave responsibility resting upon respondent in

connection with his duties under the law, and that respondent. is advised under the law that one of the methods given to. him for the protection of the public is to carefully scrutinize. every application made for a charter for a new bank, and to. take into consideration everything connected therewith in each individual case, and that this especially includes the. location of the bank, the territory contributory thereto, its. possibilities and probabilities from a banking standpoint,. and that in this case he has given much attention to all' these and other questions connected therewith, and in the. exercise of his best judgment as a sworn officer of the. State of West Virginia he has arrived at the conclusion that. this application should not be approved.''

If, as we believe and hold, the matters stated are fairly considered within the scope of the authority conferred by the. legislature, and the officer upon whom such authority devolved duly considered them, as he solemnly swears he did before deciding to withhold approval, the writ ought not to issue. For, while this court may by mandamus compel action in good faith by an officer clothed with discretionary power, we will not award the writ for such purpose unless it appears that he has clearly and wilfully disregarded his duty, or that his action was flagrantly wrong working unjust results, or that his decision was due to caprice, passion, partiality or corruption. *Dillon* v. *Bare & Carter,* 60 W. Va. 483.

Two recent decisions, one by the Supreme Court of Illinois, *People ex rel Schweder* v. *Brady,* 268 Ill. 192, the other by the Supreme Court of New York, Appellate Division, *In re Lunghino & Sons,* 163 N. Y. Supp. 9, construing. provisions regulating banking institutions and conferring authority on specified public officers similar to that dealt with here, support the principle in *Dillon* v. *Bare, supra.* Speaking of the provision of the New York Banking Law which ''makes the approval of the superintendent a condition precedent to the doing of any act,'' the court held that it lay within his sound discretion to grant or refuse his approval, and, though a later section conferred upon the court the right to review the action of such official, the exercise of that right was held to be restricted to instances where he

acted arbitrarily and without good cause, or where there
had been an abuse of discretion, and that "acts properly
within such discretion are not subject to judicial review
at the instance of some one claiming that a different deci-
sion should have been made."

Likewise, *First Nat'l Bank of Capitol Hill* v. *Murray,* 212
Fed. 140, held not reviewable acts of the Comptroller of the
Currency done within the scope of the powers conferred on
him by the National Banking Act as to control and visitation.

Some of the matters alleged by respondent for his refusal
to approve the initial steps taken for the establishment of
the proposed bank may not, as petitioners say, be sufficient.
But when the return is considered in its entirety in the
light of the objects of the State Banking Act taken as a
whole, and in view of the authorities, it presents facts, cir-
cumstances and conditions such as we think do not war-
rant us in awarding the peremptory writ. Apparently the
chief purpose of the legislature in enacting the state bank-
ing law was to regulate the banking business and render
it more efficient and more safe for those who entrust money
to them. These considerations and numerous others of simi-
lar and like character have cooperated to induce such legisla-
tion by many if not all of the states, following Congression-
al action as the safest and best criterion. Depositors have
suffered severe loses by the failure of banks, due some-
times only to the lack of business enterprise in the community
to create a demand for capital, but generally because of
the dishonesty or incapacity of bank officers or agents, and
when insolvency occurs, as it often does from one or both
causes, it is usually the depositor least capable of sustaining
the loss who suffers most seriously.

What motive prompted the creation of the office and the
enactment of the provision granting such authority if the
legislature did not intend the public to derive some sub-
stantial benefit and protection from the power granted?
Certainly there was no public demand for protection against
injury from informality in the application for the privi-
lege of engaging in the business. No serious results have
flowed from that source. It was to reduce the probability

of mishaps and losses of the nature mentioned above that the Banking Commissioner was entrusted with such power, and to achieve that end a certain discretion must be allowed him in the exercise of his duties.          *Writ denied.*