JAMES R. WEER ET AL. *v.* GEORGE W. PAGE, BANK COMMISSIONER.

[No. 47, January Term, 1928.]

*Decided April 11th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*William Milnes Maloy*, with whom were *Maloy, Brady & Yost* on the brief, for the appellants.

*Herbert Levy, Assistant Attorney General*, with whom was *Thomas H. Robinson, Attorney General*, on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

In order to form a banking corporation to be known as the "State Bank of Sykesville," the appellants, as required

by law, presented articles of incorporation to the state bank commissioner with a view to obtaining his prerequisite approval. The commissioner declined to approve the incorporation for reasons to be presently stated. In this injunction suit redress is sought on the alternative grounds that the statute investing the bank commissioner with authority to forbid a proposed incorporation is unconstitutional, if construed as justifying his action in this case for the reasons which he assigned, or that his decision was invalid as being beyond the scope of the power intended to be conferred.

In regard to the incorporation of banks and trust companies it is provided by section 22 of article 11 of the Code, in part, as follows:

"The articles of incorporation shall be executed in triplicate by the persons joining therein before any officer authorized to take acknowledgments, and then filed with the bank commissioner for examination. The bank commissioner shall thereupon ascertain from the best sources of information at his command, and by such investigation as he may deem necessary, whether the character, responsibility and general fitness of the person or persons, named in such certificate, are such as to command confidence and warrant belief that the business of the proposed corporation will be honestly and efficiently conducted in accordance with the intent and purposes of this article, and whether the public convenience and advantage will be promoted by allowing such proposed corporation to engage or continue in business. After the bank commissioner shall have satisfied himself by such investigation whether it is expedient, and desirable to permit such proposed corporation to engage or continue in business, he shall have power to require such changes in said certificate as he may deem necessary. He shall within sixty days after the date of the filing of such certificate for examination, endorse upon each of the triplicates thereof over his official signature, the word 'approved' or the word 'refused' with the date of such endorsement. In case of refusal he shall

return one of the triplicates so endorsed to the pro-
posed incorporators."

·The refusal of the bank commissioner to approve the
articles of incorporation for a bank in Sykesville, submitted
by the appellants, was explained by the following statement
in the commissioner's letter returning one of the copies:
  "After a very careful investigation I can only reach
  the conclusion that it would not be expedient to grant
  the charter, as in my opinion, there is no need for
  the bank there, and it would not have a reasonable
  chance for success."

The charter had been sent to the commissioner with a
letter of transmittal from which we quote as follows:
  "Accompanying the charter are letters to you from
  a number of leading citizens of Sykesville and vicin-
  ity which can be added to should you decide that fur-
  ther expression of public opinion is necessary. Sykes-
  ville is an incorporated town, in the southern part of
  Carroll County, about 18 miles south of Westminster,
  14 miles northwest of Ellicott City, 15 miles east of
  Mt. Airy and 12 miles west of Randallstown. It is
  the banking and business center of a section of Howard
  as well as a part of Carroll County. The capital
  stock of $25,000 has been subscribed for by 160 per-
  sons. Of a total number of 30 business houses in
  Sykesville, the proprietors of 19 establishments are
  among the subscribers. Taneytown, Union Bridge,
  Hampstead and Mt. Airy, each has two banks, and
  Sykesville desires to have and requests that you per-
  mit it to have the same advantages and privileges en-
  joyed by these other communities in Carroll County."

The amended bill alleges that the charter was refused by
the commissioner without opportunity being given to the
proponents to be heard, that the public convenience requires
a state bank in Sykesville in addition to the national bank
already in operation there, that the adverse action of the
commissioner was based on reasons not recognized by the

law, and that his conclusions were contrary to the facts and could not fairly be reached upon the "open and ascertainable evidence." There was, however, a disavowal in the bill of any intention to charge that the commissioner had "acted corruptly or fraudulently or from bias or prejudice."

A demurrer to the bill was sustained, and the plaintiffs declining to amend further, the bill was dismissed by. the decree which is the occasion of this appeal.

The business of banking bears such a relation to the economic security of the public as to be a legitimate subject of regulation by the state in the exercise of its police power. This proposition is not here disputed. It is supported by ample authority. *Noble State Bank v. Haskell,* 219 U. S. 104; *Shallenburger v. First State Bank,* 219 U. S. 114; *Engel v. O'Malley,* 219 U. S. 128; *Farmers' & Merchants' Bank v. Federal Reserve Bank,* 262 U. S. 649; *Dillingham v. McLaughlin,* 264 U. S. 370; *Schaake v. Dolley,* 85 Kan. 598, 37 L. R. A. (N. S.) 877; *Saari v. State Securities Com.,* 149 Minn. 102; *Dodd v. Hill,* 84 W. Va. 468; *Mulkey v. Bennett,* 95 Ore. 70. In *Noble State Bank v. Haskell, supra,* the Supreme Court, in an opinion by Mr. Justice Holmes, said that the question "whether the right to engage in banking is or can be made a franchise," "is not answered by citing authorities for the existence of the right at common law." The opinion said: "There are many things that a man might do at common law that the states may forbid. He might embezzle until the statute cut down his liberty. We cannot say that the public interests to which we have adverted, and others, are not sufficient to warrant the state in taking the whole business of banking under its control. On the contrary, we are of opinion that it may go on from regulation to prohibition except upon such conditions as it may prescribe. In short, when the Oklahoma Legislature declares by implication that free banking is a public danger, and that incorporation, inspection and the above-described co-operation are necessary safeguards, this court certainly cannot say that it is wrong."

The fact that the statute quoted has no application to private bankers, or to the establishment of branch banks by existing corporations, does not render it invalid. The purpose of the statute is to regulate the exercise of the State's authority in conferring corporate powers and privileges for the prosecution of banking enterprises. It is not essential to such a policy that similar restrictions shall be imposed upon private bankers, or upon banking corporations in existence when the statute was enacted. In the exercise of its police power the Legislature may classify, upon grounds not plainly unreasonable and arbitrary, the persons to whom its regulations shall apply. *Ruggles v. State,* 120 Md. 553; *American Coal Co. v. Allegany County,* 128 Md. 564; *State v. Seney Co.,* 134 Md. 437. There is no valid objection, in our opinion, to the classification involved in the statute under discussion.

It is competent for the State to impose upon administrative officers the duty of ascertaining specific facts upon which a prescribed application of the police power is made to depend. *Tighe v. Osborne,* 150 Md. 452; *Baltimore v. Bloecher,* 149 Md. 648; *Smith v. Standard Oil Co.,* 149 Md. 61; *Creaghan v. Baltimore,* 132 Md. 442; *State v. Hyman,* 98 Md. 596; *Osborne v. Grauel,* 136 Md. 88; *Boehm v. Baltimore,* 61 Md. 259; *Downs v. Swann,* 111 Md. 53; *State v. Loden,* 117 Md. 384; *State v. Broadbelt,* 89 Md. 565; *Deems v. Baltimore,* 80 Md. 164; *Scholle v. State,* 90 Md. 729. No question is raised as to the right of the Legislature thus to avoid the inconvenience of determining, from its own investigations, the results in particular instances of the application of its statutory rules in reference to the incorporation of banks. The contention is that it could not constitutionally confer upon the bank commissioner authority to reject a charter in his unrestricted discretion or upon such grounds as those on which his action in this case was based.

The statute does not commit to the bank commissioner an unlimited discretion. It directs him to ascertain, "whether the character, responsibility and general fitness" of the in-

corporators "are such as to command confidence and warrant belief that the business of the proposed corporation will be honestly and efficiently conducted," and "whether the public convenience and advantage will be promoted by allowing the proposed corporation to engage or continue in business." These are sufficiently definite standards for the administrative action which the statute authorized. *Public Service Comm. v. Byron,* 153 Md. 464; *Electric Utilities Co. v. Public Service Comm.,* 154 Md. 445. The reasons given by the commissioner for his disapproval of the Sykesville bank charter did not include any objection to the incorporators with respect to their qualifications. The explanation was simply that the bank was not needed and that it would not have a reasonable chance to succeed. This is said to be a different basis of decision from that which the statute defines. Its concern was with the public convenience and advantage, and, according to its evident design, the commissioner was authorized to refuse a projected incorporation by which that object would not be promoted. In stating his conclusion that another bank was not needed at Sykesville, and that its prospect for success was unfavorable, the commissioner was dealing with considerations which vitally affected the question presented for his determination. It could not be said that the public convenience of a community would be promoted by the organization of an additional bank which it did not need, and its interests might be seriously prejudiced by the unsuccessful operation of such an institution. In substance and effect, therefore, the statement of the commisioner was equivalent to a declaration that it would not promote the public convenience and advantage to permit the new bank to be organized. This was an important question, and a just regard for the rights of the applicants, as well as the interests of the community, required a full and fair inquiry by the commissioner as to all the facts and conditions by which his decision might properly be affected. A casual and incomplete consideration of the case would not satisfy the demands of his duty.

The letter of the commissioner, declining to approve the charter submitted by the appellants, stated that he arrived at his conclusions after a careful investigation. But the bill of complaint alleges that the conclusions so reported could not fairly be reached upon the ascertainable evidence, and were contrary to the facts, unreasonable, and arbitrary. This averment is admitted by the demurrer for the purposes of our decision. It would not be proper to treat such an allegation as a conclusion of law, when the facts upon which the commissioner based his determination are not stated in his letter or otherwise shown in the record. As the case is now presented, we must consider it as involving a virtual concession that the rejection of the charter was in pursuance of conclusions to which the facts and "the open and ascertainable evidence" were opposed. This effect of the demurrer cannot be ignored. It requires us to proceed upon the assumption that the commissioner's investigation was inadequate and that his views as to the facts were wholly unwarranted. No appeal from the action of the commissioner is provided by the statute, and in this proceeding the court would have no right to reverse his decision upon a review of any evidence by which it could legally be supported. *Funeral Directors v. State Board of Undertakers,* 150 Md. 294; *Henkel v. Millard,* 97 Md. 24. But when there is no indication in the record of the evidence upon which the commissioner acted, or any detailed description of the nature and extent of the investigation which he conducted, and when the charge of improvidence and arbitrariness in not considering available evidence, and in deciding contrary to the facts, is admitted by the demurrer, we are not at liberty to assume that his duty to ascertain the statutory conditions for the approval or rejection of the charter was duly performed.

If the decision of the commissioner disregarded evident and important facts by which his judgment should have been guided, his action was not within but beyond the purview of the statute which prescribed his authority. In that event his refusal to approve the charter would not be sustainable as an exercise of statutory power, but would have to be held void

as a mere exertion of his individual will. The statute imposes an important duty and responsibility upon the commissioner in requiring him to determine the questions of public convenience and advantage to which it refers. For the solution of such problems he must avail himself of "the best information at his command." While a formal hearing is not expressly required by the statute, and was not requested by the appellants, yet sufficient opportunity should be afforded applicants and the public to support or oppose an effort to obtain a bank charter under the laws of the state. The investigation here in question does not appear to have been conducted with undue haste, but, as described in the bill of complaint, it did not utilize readily available evidence which might have demonstrated the public need and the probable success of the bank which the plaintiffs wish to incorporate. An investigation thus failing to follow the course directed by the statute, and producing results which, upon the pleadings, must be regarded as concededly wrong, could not be sustained as a valid exertion of administrative power.

The specific question to be decided in this appeal is whether the allegations of the bill of complaint required an answer. In our opinion they were sufficient for that purpose. The demurrer did not meet, except technically to admit, the allegation of fact that the commissioner did not consider evident conditions by which his action should have been governed. If such conditions were in reality thus ignored, the resulting rejection of the charter would be an arbitrary act and consequently subject to restraint by a court of equity. *Baltimore v. Bloecher; Funeral Directors v. State Board of Undertakers, supra.* It is not permissible for the court to anticipate the defense which the answer may interpose, or to decide the case on the theory that the commissioner's investigation was reasonably adequate to meet the statutory requirement. In questioning by demurrer, rather than denying by anwser, the averments of the bill of complaint, the defendant has made it the duty of the court to decide whether the facts alleged are sufficient, if proved, to entitle the plaintiffs to equitable relief. For the reasons stated we are obliged to

make an affirmative reply to that question. The case will be remanded in order that an answer may be filed and further proceedings had to determine whether the disputed action of the bank commissioner was in pursuance of such an investigation as the law requires, and in the exercise of his judgment applied to the information so obtained, in which event it would not be subject to judicial review and control, or whether it was the result of an abuse of his authority and discretion, which would justify the court's intervention to ensure a due observance by the commissioner of the statutory limitations.

> *Decree reversed and cause remanded for further proceedings.*

---

PARKE, J., filed the following dissenting opinion.

The dissent in this case rests upon the two alternative propositions; that the statute requires a hearing upon which the bank commissioner bases his decision, and, if not, that the bill of complaint does not contain allegations sufficient to demand an answer from a public officer in the discharge of a duty involving the exercise of his judgment and discretion. It is conceived that the importance of these questions of construction and of pleading justify this opinion.

1. The statute under which the bank commissioner acted commanded him to make an investigation for the purpose of ascertaining if it be expedient and desirable to permit the proposed corporation to engage in the banking business at Sykesville. The statute directed him to reach his conclusion after ascertaining from the best sources of information at his command, and by such investigation as he might deem necessary, first, whether the character, responsibility, and general fitness of the incorporators of the applicant be such as to command confidence and warrant belief that the business of the proposed corporation would be honestly and efficiently conducted in accordance with the intent and purposes of the statute, and, second, whether the public convenience and advantage would be promoted by allowing such proposed cor-

poration to engage in the banking business. The first inquiry related to the personnel of the incorporators, and the second, to the public good. An adverse conclusion on either of these inquiries would compel him to reject the application, but his finding must be in the affirmative on both inquiries before he could sanction the incorporation. The statute specifies no form of procedure, and no method of investigation, nor does it allow an appeal from the commissioner's decision, which must be expressed in the words "approved" or "refused" endorsed upon the submitted certificate of incorporation over the commissioner's official signature and the date of the endorsement. Section 22 of article 11 of the Code. It is clear that the legislative intent was to commit the determination of the existence of the facts, which the statute made a condition precedent to the privilege of incorporation, to the judgment and discretion of the bank commissioner, without the right of review. The authorities cited in the opinion of this court support its conclusion that the statute is not unconstitutional, although no hearing be provided.

Since the statute does not expressly enact that the commissioner must give the incorporators of a proposed bank a hearing before he acts officially, the duty of the bank commissioner to accord the proponents of the bank a hearing must be found in the language of section 22, as interpreted and construed with the single purpose to determine and give effect to the intention of the Legislature within constitutional bounds, and under the limitation that the power of the court is judicial and not legislative. In the case of *Henkel v. Millard*, 97 Md. 24, where the duties of the state board of pharmacy were not so extensive as under the law now being considered, this court said: "Section 8 of the Act of 1902, under which the board evidently acted in this case, requires that the applicant shall be an adult and shall have been at the date of its passage actively engaged as owner or manager in compounding drugs, etc., and that he shall make an affidavit 'to that effect' before he is entitled to registration and a certificate. Other sections of the act provide for the appointment of a

board of 'skilled and competent pharmacists' who are themselves 'actively engaged in the retail drug business' to pass upon the fact of the applicant's answering to the description contained in section 8, and of his having made an affidavit to that effect. Surely the duties thus imposed upon the board are not strictly ministerial." And then the court added: "Their discharge necessarily requires the examination into evidence and the exercise of judgment and discretion." At page 32. A *fortiori* does the performance of the bank examiner's duties under section 22 of article 11 compel "the examination into the evidence" relative to the character, responsibility, and general fitness of the incorporators, and the desirability of the establishment of the bank from the standpoint of public convenience and welfare; and then the determination of the questions of fact upon this evidence. The provisions of section 22 contemplate that this evidence shall be procured by an "investigation" by the commissioner. While he is directed "to ascertain from the best sources of information at his command, and by such investigation as he may deem necessary," the statute is silent with respect to how he shall "ascertain" and in what manner he shall conduct his "investigation," although the section does require him to be satisfied by such investigation. The intention of the Legislature depends, therefore, upon the sense in which "ascertain" and "investigation" are used. Both these words are general and comprehensive terms. A fact may be "ascertained," and an "investigation" concluded, secretly or publically, and the method in either case may be a private or *ex parte* procedure, or judicial, or a *quasi* judicial, hearing. See 5 *C. J.* 605, 606 and notes; 33 *C. J.* 808; *State Tax Comm. v. Kohler,* 193 Mich. 420; *People v. Sharp,* 107 N. Y. 427. It thus appears that these words import nothing as to the procedure to be followed, and their use renders section 22 ambiguous and its meaning uncertain, and presents a problem in construction.

As has been stated, the words are broad but their meaning is restricted to a *quasi* judicial hearing by force of the purpose of the Legislature in the passage of the law, its subject

matter, and the nature of the duties of its administrative officer. The object of the enactment was to permit corporate banking and to safeguard the public convenience and interests. If the incorporators possessed the qualifications prescribed and the public welfare would be subserved by the establishment or continuation of the enterprise, the statute contemplated the approval and authorization of the incorporation; and made it the duty of the commissioner to give his approval. To secure at once the privilege of the citizen to incorporate and organize a bank, and the welfare of the public against the formation of a bank by undesirable or incompetent incorporators or when it would be of no public service, the enactment empowered and directed the bank commissioner to weigh the evidence, and decide the facts specified according to his judgment and discretion. The nature of his duties constituted him a *quasi* judicial officer, and it is contrary to the genius of our institutions that an official, charged with securing and weighing evidence, and determining issues of fact involving the privilege of citizens to combine to do business in a corporate form, on the one hand, and the convenience and welfare of the public, on the other, should not ascertain the facts and conduct his investigation at a hearing, where the incorporators and the State, through the bank commissioner, would produce all the evidence available upon which the commissioner would base his decision according to his judgment and discretion. The construction advocated gives to the words "ascertain" and "investigation" a fair and sensible construction, and effects the reasonable purpose and object of the legislation. Unless the meaning of the general words employed be so confined, the commissioner would be at liberty to adopt any form of investigation, and to vary his course according to his will in any particular instance, and render his decision upon evidence secretly or privately obtained, without the incorporators having any knowledge of its purport or opportunity to refute or disprove it. It is necessary to conclude that such an undesirable and dangerous procedure was not a part

of the legislative design. From the nature of the terms it is clear that bounds must be placed upon the method by which the commissioner is to procure evidence and to conduct his investigation; and since there is nothing in section 22, or in the circumstances cognizable by the court under which the terms were inserted, defining this restriction, it becomes a judicial duty to declare their meaning through the process of construction. The words of the statute admit of two constructions. The first is that the commissioner may ascertain his facts and make his investigation without a hearing accorded the incorporators; and the second is that a hearing, after notice to the incorporators, must be had, or an opportunity be afforded the incorporators for a hearing, at which all the evidence on the part of the incorporators and the State shall be presented to the commissioner for his decision. The first construction allows an unregulated course which partakes too much of star-chamber methods, while the second assures a formal procedure which is fair, open, and just, and so should be adopted by the court as the more rational and beneficial construction. *Roland Park v. State,* 80 Md. 448, 451; *Hooper v. Creager,* 84 Md. 195, 248; *Merrill v. Military Department,* 152 Md. 474, 477, 479; *Frazier v. Leas,* 127 Md. 572, 575; *United States Fid. & Guar. Co. v. Taylor,* 136 Md. 545, 548; *Riggin v. Wyatt,* 139 Md. 476, 478-480; *Mersey Steel and Iron Co. v. Naylor* (1882), 2 Q. B. D. 648, at p. 660; *Countess of Rothes v. Kirkcaldy Watermans Commission* (1882), 7 App. Cas. 694, 702; *Llewellyn v. Vale of Glenargan Railway* (1898), 1 Q. B. 473, 478; *Sullivan v. Metcalf* (1880), 5 C. P. D. 455, 459, 460.

2. The decision of this court is that the statute did not compel the commissioner to give the applicants a hearing. If this conclusion be given effect, it is difficult to see why the commissioner is required to answer the bill of complaint, which expressly exculpates the commissioner from all fraud, misconduct, or intentional error, and which shows that the commissioner informed the incorporators that his decision was based upon "a careful investigation" and his "opinion

that there is no need for the bank there, and it would not have a reasonable chance for success." The commissioner, therefore, put his refusal squarely upon the ground that his investigation had convinced him that the public convenience and interest would not be promoted by the establishment of the proposed bank. As against this official action and assignment of its basis, the complainants bring nothing of substance to warrant a court of equity in rescinding the commissioner's official disapproval. It is, of course, true that his findings of fact are alleged by the bill of complaint to have been unreasonable, arbitrary, and "without evidence to support them and contrary to the evidence known to the complainants and ascertainable from any source in the Sykesville area, except from those few who identify with or place above the public advantage and convenience their prospects of extravagant and excessive returns from their investments in the present bank at Sykesville, and these complainants know and believe and therefore aver that because of the conditions, prospects, possibilities, needs and demands of the farming, dairying, and commercial interest of the community, that any adverse conclusion purporting to be based on so-called technical, scientific, skilled, or expert, farsighted or foresighted, precautionary or preventive, safety or security, prescience or experience, is contrary to all the evidence, without any evidence to support it, illogical to the decree of absurdity, and could not be arrived at on the evidence, facts and conditions by any fair-minded man, be he expert or otherwise."

This expression of opinion or belief is based upon an amplification in the bill of complaint of the statement laid before the commissioner when the articles of incorporation were presented. These averments of the bill are affected by the vice of being general, vague, and argumentative, and conclude with the allegation that the things stated "were and are matters of actual knowledge or of ready ascertainment by the respondent," or "all of which evidence is and was either known to or ascertainable by the respondent." The bill of complaint, therefore, admits the commissioner made

an investigation and that the facts were disputed by interested parties, and nowhere denies that every element of evidence relied upon by the appellants was considered by the commissioner. The bill of complaint leaves in doubt and uncertainty whether any relevant fact was unascertained by the commissoner, and in a bill for a mandatory injunction a clear and definite statement of the facts relied on must be made.

As the writer reads the bill of complaint, its allegations are, at bottom, a dissent from the commissioner's decision on controversial facts alleged to be either known to or ascertainable by the commissioner. If the evidence was before the commissioner, it was his exclusive province to decide the issue of fact according to his judgment and in the exercise of his discretion. If his finding of fact be erroneous, his mistake gave the appellants no equity. On the other hand, it should be borne in mind that the appellants assembled the pertinent facts and stated the grounds upon which they rested their assertion that the public convenience and welfare demanded the commissioner's approval at the time the articles of incorporation were submitted. And even if, in the discharge of his duty, which the appellants declare was free of all impropriety, the commissioner did not find, consider, nor ascertain in his investigation some other relevant facts, this court, in the nature of the matter, could not correct his omission. As the commissioner did not act as a ministerial officer, the applicable and well established rule of law deprives a court of any power to review, reverse, or correct an erroneous decision, or to control the commissioner's action, even though the statute does not provide any other method to remedy his errors of judgment, since the bill of complaint avows that the commissioner was neither personally nor officially dishonest or dishonorable, and that he did not act corruptly or fraudulently nor from bias or prejudice. It is firmly established that, in the absence of fraud, corruption, or mistake of law, the exercise of judgment and discretion by a public official, in ascertaining and declaring the existence or non-existence of certain facts, is final, where,

as here, the statute conferring the power makes no provision for an appeal. *Manger v. Board of Examiners,* 90 Md. 659, 673-674; *Blundon v. Crosier,* 93 Md. 355, 361-363; *Henkel v. Millard,* 97 Md. 24, 30-32; *Graham v. Gaither,* 140 Md. 330, 346; *Woods v. Simpson,* 146 Md. 548, 551; *Funeral Directors v. State Board,* 150 Md. 294, 297; *Wiley v. School Commrs.,* 51 Md. 401, 404; *Shober v. Cochrane,* 53 Md. 544, 549; *Saari v. State,* 149 Minn. 102; *Dodd v. Hill,* 84 W. Va. 468; *Quinby v. Conlan,* 104 U. S. 420, 425, 426.

It is submitted that the better rule is that, in exercising a *quasi* judicial power, a public official will be assumed not to have acted arbitrarily or otherwise than in the exercise of a sound discretion, and that the pleader must clearly and unequivocally allege matters of fact which, if true, would establish the contrary, before a proceeding for a mandatory injunction will require an answer from a public official. See *Chappell v. Funk,* 57 Md. 465, 475, 476. For the reasons stated the writer believes the bill of complaint to be defective, especially when it is accompanied by the bank commissioner's statement of the reasons for his conclusion and of the fact that his decision was reached as the result of a "careful investigation."

BOND, C. J., also dissents.