ALBERT ET AL. *v.* PUBLIC SERVICE COMMISSION
OF MARYLAND

[No. 57, October Term, 1955.]

28

30

Decided February 9, 1956.

The cause was argued before DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Hyman A. Pressman* for the appellants.

*Leon H. A. Pierson* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from an order sustaining a demurrer to a petition for a writ of *mandamus,* without leave to amend, and the entry of a judgment for the appellees for cost.

On January 11, 1955, the appellants, one hundred taxicab drivers, filed a petition against the Public Service Commission of Maryland, (the Commission), making the following allegations. They had had an aggregate of 1,718 years experience as taxicab drivers, representing an average of more than seventeen years. They desire to "better their lot in life" by operating and owning taxicabs instead of working for someone else. On September 15, 1954, they filed a written application for one hundred permits to operate taxicabs and a request for hearing thereon at the office of the Commission. On September 29, 1954, the Commission refused to pass on the petitioners' application and indefinitely deferred the holding of a hearing for reasons contained in a letter from the executive secretary of the Commission. On October 12, 1954, the attorney for petitioners wrote to the Commission requesting a hearing. On October 22, 1954, the attorney for the petitioners wrote another letter to the Commission requesting a hearing in order to present evidence to prove the following: (1) That the taxicab service in Baltimore City is inadequate to satisfy public necessity and convenience. (2) That the issuance of additional taxicab permits is necessary for the public welfare. (3) That the appellants are qualified to receive permits, are entitled thereto and are in a position to render efficient service, including the hours when many present permit holders change shifts and leave the public

without taxicab transportation. On October 28, 1954, the Commission wrote a letter to petitioners' attorney promising to give consideration to petitioners' request and to advise them of their decision in the near future. On January 5, 1955, the Commission wrote another letter to petitioners' attorney refusing to grant the hearing requested.

The petition further alleged that the refusal of the Commission to grant petitioners a hearing and to pass on their application for permits was dogmatic, arbitrary and capricious. Said refusal deprived petitioners of producing evidence before the Commission. The Commission obtained its data from present holders of taxicab permits, who wished to limit their competition without giving the petitioners an opportunity to discredit such data or to present evidence in contradiction thereto. The Commission's failure to pass on petitioners' application deprived them of their right to appeal, which they would have had if the application had been refused. The taxicab service in Baltimore is deplorable and inadequate and the granting of additional permits to operate taxicabs will best serve the public welfare and convenience. Petitioners asked that a *mandamus* be issued directing the Commission to hold a hearing on petitioners' application and within a reasonable time to pass an order granting or refusing to grant said application in whole or in part.

The letter aforesaid from the executive secretary of the Commission to petitioners' attorney, dated September 29, 1954, stated in part as follows: "* * * while the Commission is not now considering the issuance of additional permits for the operation of taxicabs in Baltimore City, your letter and the enclosures have been placed on file and that consideration will be given thereto by the Commission if, and when, additional permits are to be issued. I am further directed by the Commission to say that it has in its files applications for the operation of taxicabs in Baltimore City aggregating nearly 4900 permits, including applications submitted by a substantial

number of applicants named in the list submitted with your letter of September 15th and that if, and when, additional permits are to be issued, the Commission would give consideration to all applications, including those heretofore filed, as well as those which you have submitted. The Commission will, of course, see that you are notified of any hearings to be held in connection with applications for additional taxicab permits." The letter of January 5, 1955, from the Commission, referred to in the bill of complaint, contained, among other things, the following: "* * * the Commission has given further consideration to the matter and it is even more firmly convinced now that there is no need for additional permits to be issued. The study that it has made, which is available to you and to any interested party, shows that with the increasing use of two-way radio equipment, the number of unfilled requests for service is being constantly decreased; that the installation of radio units in more taxicabs now in operation will still further lower the number of unfilled requests; that except for seasonal demands and peaks resulting from unusual conditions, the number of unfilled orders is approaching a minimum; that the average revenue per mile of operation for 1954, month by month, is uniformly lower than for the same month of 1953; that gross revenues are substantially lower for 1954 than for 1953; and that fewer passengers have been carried in 1954 than were carried during a similar period in 1953. In view of these facts it is clear to the Commission that additional taxicabs are not needed, that it would not be in the public interest to permit more taxicabs to be operated, and that no useful purpose would be served by a hearing that would confirm the information and data in the files of the Commission."

To that bill of complaint, the Commission filed a demurrer in which it cited the provisions of Code, 1951, Article 78, Section 21. The demurrer further stated that the petition failed to show a clear legal right in the petitioners differing from that of the general public to hold the requested hearing. Also, that the petition

failed to show that the refusal to hold a hearing is within the ministerial powers of the Commission and that a hearing would serve any useful purpose. The issuance of a writ of *mandamus* would impose upon the Commission an intolerable burden, not contemplated or provided by the provisions of Article 78, Section 21, *supra*.

After hearing on the demurrer, the trial judge found that there is no provision in law that the Commission must hold a hearing on every application. Further, that if he should issue a *mandamus* for such a hearing, many details would arise, such as, how long the hearing should last, how many witnesses should be heard, and what the scope of the inquiry should be. He, therefore, on May 12, 1955, passed an order sustaining the demurrer to appellants' petition without leave to amend and entered a judgment for costs in favor of the appellees. From that judgment appellants appeal.

Appellants contend in this Court that the Commission cannot legally deny a hearing and a decision upon an application for taxicab permits.

It is plain that the words in the letter from the Commission on January 5, 1955, as aforesaid, that "it is clear to the Commission that additional taxicabs are not needed, that it would not be in the public interest to permit more taxicabs to be operated" was a denial of the requested permits. The question therefore before us is whether the appellants are entitled to a hearing before the Commission on their application for permits.

It is, of course, well settled in Maryland that the Commission, created by the Legislature, has only such powers as have been specifically given it by the Legislature. *Utilities Co. v. Public Service Co.*, 154 Md. 445, 453, 140 A. 840.

Code, (1951), Article 78, Section 21, *supra*, in effect when the petition for *mandamus* was filed and the judgment rendered, provided: "No person, association or corporation shall, on or after January 1, 1932, operate a taxicab or taxicabs in any incorporated city or town in the State of Maryland, having a population of more

than fifty thousand persons, or between points within such city or town and points in proximity thereto, until such person, association or corporation shall have obtained a permit from the Public Service Commission to operate such taxicab or each of such taxicabs. Such permit shall be issued only after written application for the same shall have been made to the Commission; and it shall be the duty of the Commission, upon such application, to investigate the expediency of granting such permit, the number of taxicabs to be used, and the rate to be charged, and, if, in the judgment of the Commission, it is deemed best for the public welfare and convenience that said permit should be granted, said Public Service Commission is hereby empowered and authorized to grant such permit, subject to such conditions and terms, and for such duration of time, not exceeding the period of one year, as it may deem advisable. But if said Public Service Commission deems the granting of such permit prejudicial to the welfare and convenience of the public, then the said Public Service Commission is hereby empowered and authorized to refuse the granting of the same. The said Public Service Commission of Maryland is further empowered and authorized to make such rules and regulations as it may deem necessary to govern the control and operation of taxicabs, and enforce the same by such penalties or forfeitures as it may reasonably prescribe, including the suspension or revocation for reasonable cause, or causes, after investigation and hearing, of the permit granted under the provisions of this Article; any person, association or corporation of interest who shall be dissatisfied at the action of the Public Service Commission for refusing to grant a permit or for any ruling, order or regulation hereunder, shall have the right of an appeal as provided in Section 74 of this Article and to the Court of Appeals."

The plain reading of this Section indicates that an investigation by the Commission is contemplated on an application for a permit, but no hearing. An "investigation and hearing" is provided for the "suspension or

revocation" of such permit. The appellants contend that because Article 78, *supra,* Section 27(c), gave the power and authority to any one commissioner to administer oaths and summon witnesses to testify in any inquiry, investigation, hearing or proceeding, a hearing is contemplated for the refusal of a permit under Section 21, *supra.* Section 27(c) apparently applied where a hearing is provided in any part of Article 78, such as the revocation of a permit under Section 21, *supra.* There is no indication that Section 27(c) makes a hearing mandatory on the refusal of a permit under Section 21, *supra.* If such a hearing was contemplated by the Legislature it could have been plainly stated as was done for the revocation of the permit.

The appellants further claim that the denial of the requested hearing was unconstitutional. There is no doubt that the statute clearly contemplates that the Commission is not required to have a hearing in order to determine the need for additional taxicabs. The Commission in performing this function of determination acts in a legislative or an administrative-legislative capacity and not in a judicial or *quasi*-judicial capacity. Therefore, due process does not require a hearing. The granting or withholding of a franchise or license under the standards prescribed by the Legislature is legislation by delegation.

It was said by this Court in *Bosley v. Quigley,* 189 Md. 493, 56 A. 2d 835: "Competition is a legislative question, not one for the judiciary, unless the decision is shown to be unreasonable or arbitrary. * * * the Commission has deemed the regulated monopoly the best method of providing transportation for the welfare and convenience of the public as a whole. * * * It is unprecedented * * * for the courts to say that the Public Service Commission should grant competition where that Commission has found that there is an adequate service * * *." One test for determining whether action by a commission is legislative where vested rights of liberty and property are not involved is whether there is laid down a rule

of future action which affects a group, and not the direct application of policy or discretion to a specific individual. *Reuben Oppenheimer,* (now Judge Oppenheimer), *Administrative Law,* 2 Md. L. R. 185, 204. See also *Murphy v. State Roads Commission,* 159 Md. 7, 149 A. 566; *Metcalf v. Cook,* 168 Md. 475, 178 A. 219; and *Bowles v. Willingham,* 321 U. S. 503, 88 L. Ed. 892, as examples of cases laying down a rule of general future action.

It is also clear from the authorities that where the function of the administrative body is legislative, notice or hearing is not required by due process of law. See *Oppenheimer, Administrative Law,* 2 Md. L. R. 185, 204, *supra,* where it is said: "If the nature of the administrative agency is essentially legislative, the requirements of notice and hearing are not necessary. The validity of a rule of future action which affects a group, if vested rights of liberty or property are not involved, is not determined according to the same rules which apply in the case of the direct application of a policy to a specific individual." See also *Oppenheimer, The Supreme Court and Administrative Law, 1936-40,* 5 Md. L. R. 231, 246, 248, where the author says: "The giving of notice and the opportunity to attend a hearing are not necessary as a matter of due process of law in an action taken by a clearly legislative body, even though they might be necessary were the power to take the same action entrusted to an administrative board." It is said in 73 C. J. S., *Public Administrative Bodies and Procedure,* Sec. 130, pages 452 and 453: "Aside from statute, the necessity of notice and hearing in an administrative proceeding depends on the character of the proceeding and the circumstances involved. In so far as generalization is possible in view of the great variety of administrative proceedings, it may be stated as a general rule that notice and hearing are not essential to the validity of administrative action where the administrative body acts in the exercise of executive, administrative, or legislative functions; but where a public administrative body acts in a judicial or *quasi*-judicial matter, and its acts

are particular and immediate rather than general and prospective, the person whose rights or property may be affected by the action is entitled to notice and hearing." A recent Massachusetts case illustrates the rule. In *Clarke v. Board of Collegiate Authority*, (Mass.), 98 N. E. 2d 273, the Court said, on the contention that an applicant was entitled to a hearing: "One may not be deprived of a personal right or a right to property without due process of law. Due process of law may require a judicial hearing. But for one to be entitled to such a hearing by an administrative board it must appear that action by the board will affect his personal or property rights." In *Mayor & City Council of Baltimore v. Biermann*, 187 Md. 514, 50 A. 2d 804, the Board of Municipal and Zoning Appeals of Baltimore denied a permit for a filling station. Two of the five members of the Board had voted against the granting of the permit and, under the Enabling Act and the Ordinance, the concurring vote of four members was required where the Board acted. The Baltimore City Court reversed that action and this Court reinstated the action of the Board. This Court there clearly recognized that the Board was acting in a delegated legislative capacity rather than as a *quasi-*judicial body. It was there said: "Considering the action of the Board as an exercise of delegated legislative, or *quasi-*legislative, power, the scope of review is different and in some respects more limited than where the action is *quasi-*judicial; e.g., the court must find that the result of the action is beyond the police power and deprives the applicant of property without due process of law." See also *Maryland Advertising Co. v. City of Baltimore*, 199 Md. 214, 86 A. 2d 169; and *Gilmor v. Mayor & City Council*, 205 Md. 557, 109 A. 2d 739.

There are no vested rights of liberty or property involved in the instant case. In *Burgess v. Mayor & Aldermen of City of Brockton*, 235 Mass. 95, 100, 126 N. E. 456, 459, it was said: "A license * * * [ to operate jitneys] is a mere privilege or permission and in no sense

a contract or property." *Morley v. Police Commissioner,*
261 Mass. 269, 277, 159 N. E. 41, (Hackney license) ;
*Roberto v. Commissioners of Department of Public Util-
ities,* (Mass.), 160 N. E. 321, (license to operate a motor
vehicle as common carrier). See also *Franchise Tax
Board v. Superior Court,* (Sup. Ct. of Calif.), 225 P. 2d
905, 911; *Asche v. Rosenfield,* (Ill.), 89 N. E. 2d 885;
*Arroyo v. Puerto Rico Transp. Authority,* 164 F. 2d 748,
753; *Bowles v. Willingham, supra; Breiholz v. Board of
Supervisors of Pocahontas County,* (Iowa), 257 U. S.
118, 66 L. Ed. 159; *Bi-metallic Invest. Co. v. State Board
of Equalization,* 239 U. S. 441, 445, 60 L. Ed. 372; *Butt-
field v. Stranahan,* 192 U. S. 470, 48 L. Ed. 525; *Nulter v.
State Roads Commission,* (West Virginia), 193 S. E.
549; *In re Opinion of the Justices,* (New Hampshire),
129 A. 117; *City of New Haven v. New Haven Water Co.,*
132 Conn. 496, 45 A. 2d 831; *Watson v. State Division of
Motor Vehicles,* (California), 298 Pac. 481; *Packard v.
Banton,* 264 U. S. 140. This Court seems to support this
rule. The appellants strongly rely on the case of *Weer
v. Page,* 155 Md. 86, 141 A. 518. However, in that case
where the Bank Commissioner refused to approve the
incorporation of a bank, this Court held that the Bank
Commissioner should have given consideration to all
pertinent factors available to him but that a formal hear-
ing before the Bank Commissioner was not necessary.
This principle was recognized in *Metcalf v. Cook, supra;*
and *Matthaei v. Housing Authority,* 177 Md. 506, 9 A.
2d 835. In *Brashears v. Lindenbaum,* 189 Md. 619, 56
A. 2d 844, it was said by this Court that it had been
frequently noted that the privilege granted or withheld
to sell alcoholic beverages is not a property right. See
also *Federico v. Bratten,* 181 Md. 507, 30 A. 2d 776; and
*Gianforte v. License Commissioners,* 190 Md. 492, 58
A. 2d 902.

Where the question has been a close one as to whether
due process required a hearing in a given situation,
the fact that a court review was afforded has been held
to swing the decision to the side where no hearing is

necessary. See, for example, *Bowles v. Willingham, supra; Hall v. Geiger-Jones Co.,* 242 U. S. 539, 61 L. Ed. 480; *Porter v. Investors Syndicate,* 286 U. S. 461, 76 L. Ed. 1226; *Prata Undertaking Co. v. State Board of Embalming & Funeral Directing,* (R. I.), 182 A. 808. Of course, the statute in the instant case gives the right of appeal to anyone dissatisfied with an action of the Public Service Commission. Under the law, by Code, (1951), Article 78, Section 74, a review of the action of the Commission in denying the permits was afforded "before any judge of the supreme bench of Baltimore City, in any court of Baltimore City of appropriate jurisdiction * * *", and by Section 77, an appeal was provided to the Court of Appeals. A provision was made by Section 76 for a transcript of all papers and proceedings before the Commission to be filed in the judicial proceeding. Also additional evidence could have been offered in the judicial proceeding. The study made by the Commission was available and could have been transmitted to the Court and there considered, and under Section 75 additional evidence could have there been offered.

Even if a right of appeal was not given by statute under the doctrine of *Weer v. Page, supra,* and *Heaps v. Cobb,* 185 Md. 372, 45 A. 2d 73, a court review would be granted if the action of the Commission was arbitrary, capricious or illegal. Without suggesting that the statute would be unconstitutional, unless there were a statutory right of appeal, it is clear that the statute is constitutional as drawn. This being so, the Commission had discretion as to whether it would or would not have a hearing, and unless its determination as to this was arbitrary or illegal, the court would not substitute its discretion for that of the Commission and issue a *mandamus* as to a matter in which the Commission had discretion. As Judge Oppenheimer expressed it in the article cited in 2 Md. L. R., *supra,* 209: "Where the determination of the administrative tribunal is essentially legislative in character or where it does not directly affect vested rights of liberty or property, the Court

will not review the exercise of discretion, unless it can clearly be shown that the power of the tribunal was corruptly or fraudulently used." *Wiley v. County Commissioners,* 51 Md. 401; *Murphy v. State Roads Commission, supra; Funeral Directors v. State Board of Undertakers,* 150 Md. 294, 133 A. 62. Other cases which hold that *mandamus* will not lie where the one to be coerced has a right to exercise judgment or discretion under analogous circumstances to the case at bar, include: *Henkel v. Millard,* 97 Md. 24, 54 A. 657; *Lee v. Leitch,* 131 Md. 30, 101 A. 716; and *Metcalf v. Cook, supra.*

Another reason why the Court will not issue a *mandamus* under the circumstances in the instant case is that the appellants, in effect, have not exhausted their administrative remedies and, therefore, as in the case of a declaratory judgment, *mandamus* will not lie, in any event, until they have. It has long been established that no one is entitled to judicial relief until he has exhausted administrative remedies. Supreme Court cases so holding are *Highland Farms Dairy, Inc. v. Agnew,* 300 U. S. 608, 81 L. Ed. 835; and *Bourjois, Inc. v. Chapman,* 301 U. S. 183, 81 L. Ed. 1027. This Court has so held to the same effect in a number of instances. In *Fulker v. County Commissioners,* 156 Md. 408, 144 A. 640, where a building permit was refused because the Act specifically allowed an appeal to the Circuit Court from the decision of the County Commissioners affirming the building inspector, it was held that the right of appeal "furnished the appellants a complete and adequate remedy at law, and *mandamus* will not lie." See also *Appelstine v. Baltimore,* 156 Md. 40, 143 A. 666, where *mandamus* was brought to compel the issuance of a permit by the Board of Zoning Appeals. This Court there said: "It is fundamental that the writ will not lie if the appellants have any other adequate and convenient remedy * * * and it is generally held that the right to have the facts upon which the petition for the writ is based reviewed upon appeal is a sufficient remedy, and that one who fails to take advantage of it is not entitled to the writ

of *mandamus*." See also *Stark v. Board of Registration,* 179 Md. 276, 285, 19 A. 2d 716.

As the Commission had the right to have a hearing or not, as it deemed necessary, and as the appellants could have appealed from the Commission's refusal to grant the permits without a hearing, *mandamus* will not lie in this case and the judgment below will be affirmed.

*Judgment affirmed, with costs.*