A–C INVESTMENT ASSOCIATION, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43192, 49682.   Promulgated November 4, 1931.

*John C. White, Esq.,* for the petitioner.
*M. M. Mahany, Esq.,* and *E. L. Updike, Esq.,* for the respondent.

588

OPINION.

VAN FOSSAN: The fundamental issue in these proceedings is whether or not the petitioner was an association taxable as a corporation.

The word " association " as used in the revenue acts is a term "used throughout the United States to signify a body of persons united

without a charter, but upon the methods and forms used by incorporated bodies for the prosecution of some common enterprise. * * * An organized but unchartered body analagous to but distinguished from a corporation." *Hecht* v. *Malley*, 265 U. S. 144.

The petitioner was an unincorporated body of persons. The petitioner's plan, scope and method of operation are definitely and specifically set out in its constitution and the by-laws which were adopted by its members. As stated in its constitution, it was organized for the purpose of providing "an investment fund" for the benefit of the contributing employees of Anderson, Clayton & Company of Houston, Tex., and the organizations affiliated with that firm. Membership in the petitioner was voluntary. Such membership consisted of "units or shares of a par value of $10 each." Under the provisions of the by-laws as amended any of the employees of Anderson, Clayton & Company or of its affiliated companies might purchase 120 such units each year and might also purchase units for members of their families. No certificates of stock were issued nor did the association have any stated capital stock. Under the by-laws of the association adopted pursuant to the provisions of the constitution, the interest of each member of the association was evidenced by a deposit book in which were entered the amount of deposits made by the member for the purpose of purchasing the units or shares of the par value of $10 each provided for by the constitution. Among other things, the by-laws defined the duties of the officers. The association was governed by an executive committee chosen by the members from the membership pursuant to the provisions of the constitution, each member having one vote for each unit or share owned by him as evidenced by the entries of deposits made in his deposit book. Regular meetings both of the association and of its executive committee were held. The executive committee performed the same kind of duties as are performed by the directors of business corporations and the duties of the officers were similar to the usual duties of officers of such corporations. Both the investment fund of the petitioner, which was contributed by the members, and the produce thereof increased largely in amount during the taxable years. The operations effecting this result were carried on by the executive committee and the officers. It is true that the association had no capital stock as such but, as was said in similar circumstances in *Sears, Roebuck & Company's Employees' Savings, etc.* v. *Commissioner*, 45 Fed. (2d) 506, reversing 17 B. T. A. 22, there are many kinds of corporations and not all of them have capital stock. The essential facts of the above cited case were quite similar to those of the proceedings now under discussion. The court held that the organization was an association operating as a corporation and taxable as such.

In the case of the petitioner the constitution adopted by its members was its fundamental law, its charter, so to speak. Its by-laws were duly adopted and were in all essentials like the by-laws of any business corporation. Its executive committee was its governing board and its officers conducted its business in a manner similar to that in which the business of a business corporation is conducted. Accounts were kept with its members by the petitioner. Petitioner's members had a large voice in the management of their organization, since, under the constitution adopted by them, they could elect the executive committee. The deposit books referred to in the findings of fact were evidence of the members' interest in the petitioner. The petitioner was engaged in investing the pooled funds of its members for the purpose of securing a profitable return. It invested these pooled funds in real estate mortgage notes, purchased through trust companies and trust departments of banks, industrial bonds, United States Treasury certificates, United States Liberty bonds, stock in building and loan associations, first mortgage loans made directly to the borrower, and in a few small loans made to members on their pass books. Its operations constituted doing business within the definition of that phrase set forth in *Flint* v. *Stone Tracy Co.*, 220 U. S. 107. It is our opinion that during the taxable years petitioner was an association taxable as a corporation.

But petitioner contends that even if it were an association carrying on business according to the practices of corporations, it was either a mutual savings bank not having a capital stock represented by shares, or a cooperative bank without capital stock, organized and operated for mutual purposes and without profit and is therefore exempt from taxation under the provisions of section 231 (2) and (4) of the Revenue Acts of 1921, 1924 and 1926 and section 103 (2) and (4) of the Revenue Act of 1928. We are not impressed with this contention. The evidence and petitioner's constitution disclose that the purpose for which the petitioner was organized was to pool the funds of the members for investment. It was not organized for any other purpose. The petitioner's name itself indicates this purpose. The following statement was made by the petitioner's sole witness at the hearing herein:

There were plenty of first mortgage notes on real estate, as Houston was a growing city, that paid 8 per cent interest on which you could get security worth double the amount of the notes. The difference between 4 per cent and 8 per cent was the inducement for organizing a mutual organization, by which the various employees could pool their little savings together and get all that the law could afford in the way of interest.

There is nothing to show that at the time of its organization it intended doing a banking business or doing anything other than pooling its members' funds for investment and profit. It made no

effort to organize itself as a savings bank or other form of bank under any statute in force in the State of Texas, the State of its location. Although the proof discloses that at the time of its organization its members were advised by counsel learned in the banking law of the State of Texas, the petitioner, nevertheless, failed until 1928 to attempt to comply with the statute controlling individuals, partnerships, associations and common law trusts engaged in the banking business. That statute provided that any such entity should add the word "unincorporated" in brackets to its name. Acts 1905, S. S., p. 11; Acts 1923, p. 422. Vernon's Annotated Texas Statutes, Revision of 1925, Vol. I, art. 541, p. 418.

It is significant that no statutory provision of Texas has been cited authorizing the organization of a savings bank not having capital stock represented by shares, or a cooperative bank without capital stock, organized and operated for mutual purposes and without profit. The Texas statutes provide for the incorporation, operation, regulation and supervision of ordinary commercial banks and trust companies having a capital stock, savings banks having capital stock, savings departments in State banks and trust companies and so-called "Morris Plan" banks. Vernon's Annotated Texas Statutes, Vol. I, Title 16, chs. 1 to 9, inclusive. Nor has any decision of the courts of Texas supporting petitioner's contention that it was either a savings bank having no capital stock, or a cooperative bank without capital stock, organized and operated for mutual purposes and without profit, been referred to. We are of the opinion that in using the words "mutual savings bank having no capital stock" and "cooperative banks without capital stock organized and operated for mutual purposes without profit," as found in the sections of the revenue act hereinbefore referred to, Congress used those terms in relation to such banks as are commonly so known. See *United States* v. *Cambridge Loan & Building Co.*, 278 U. S. 255.

In the case of *National Bank of Redemption* v. *Boston*, 125 U. S. 60, the court said:

Savings banks are institutions under public management, in pursuance of a great and public policy, organized for the purpose of investing the savings of small depositors.

The petitioner is not shown to have been known as a savings bank or to have held itself out to the public as such, nor does its constitution, which states its purpose, indicate that it was organized to act as a savings bank. It was not under any form of public control or supervision, its permissible investments were not controlled by statute, and it was not engaged in any service to the public in general.

We are of the opinion that the petitioner was not within the provisions of the statute exempting from tax mutual savings banks not having a capital stock represented by shares.

Likewise, we are not persuaded by the contention that the petitioner was a cooperative bank without capital stock, organized and operated for mutual purposes and without profit, within the contemplation of the phraseology contained in the several revenue acts. It does not appear that such an organization was known to the law of Texas. The petitioner was not known as such a bank. It was organized solely to pool the funds of its members for investment and it was, as we have held, operated for profit, this last fact alone being sufficient basis for denying it the classification asked.

The petitioner contends also that the respondent erred in not holding it either a joint venture or a series of revocable trusts, the income from which was duly reported by the several members. A joint venture is " a special combination of two or more persons, where in some specific venture a profit is jointly sought without any actual partnership or corporate designation." *Alger Melton,* 7 B. T. A. 717. The business conducted by the petitioner was not a single enterprise. It was a continuing series of investments of the funds of the association in securities which changed from time to time, and, as disclosed by the provisions of the constitution and by-laws and the facts, its membership was subject to change and did change by reason of additions and withdrawals. Furthermore, we have held that the petitioner was an association, doing business for profit, upon the methods, forms and practices of a corporation. Petitioner's enterprise was not a joint venture.

Nor do we consider that there is merit in the contention that the petitioner constituted a group of revocable trusts, the income of which is taxable to the grantor of the trust. In our opinion there is nothing in the facts which brings these proceedings within the provisions of section 219 (g) of the Revenue Acts of 1924 and 1926 or within the same provision of section 166 of the Revenue Act of 1928. These sections provide that:

Where the grantor of a trust has, at any time during the taxable year, either alone or in conjunction with any person not a beneficiary of a trust, the power to revest in himself title to any part of the corpus of the trust, then the income of such part of the trust for such taxable year shall be included in computing the net income of the grantor.

There was no trust agreement of declaration of trust connected in any way with the organization of the petitioner. It is evident too that the contributions of the petitioner's members were pooled and constituted a common fund for investment. They were not held or invested in separate amounts representing the respective contributions of the members. The facts disclose that the members could withdraw from the association at will, but whatever the liability on the part of the petitioner's executive committee and officers to the individual members created by this fact, there is

nothing in the facts or the constitution and by-laws of the petitioner to show that the relationship between any parties to the association was that of trustee and beneficiary. In the *Sears, Roebuck & Company's Employees' Savings, etc.*, case, *supra*, the court had under consideration whether the employees' saving fund was a trust, and held that it was not, but, as already stated, that on the contrary, the savings fund was an association conducted according to the methods and practices of a corporation.

None of the several alternatives suggested by petitioner commend themselves to our judgment or entitle it to the exemption asked.

The second issue is whether or not the 25 per centum added by respondent to the deficiencies for the years 1921 to 1926, inclusive, was properly so added.

Section 3176 of the Revised Statutes, as amended, provides in part as follows:

In case of any failure to make or file a return or list within the time prescribed by law, or prescribed by the Commissioner of Internal Revenue or the collector in pursuance of law, the Commissioner shall add to the tax 25 per centum of its amount, except that when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect, no such addition shall be made to the tax.

Under the above quoted provision no such addition to the tax shall be made " when a return is filed after such time and it is shown that the failure to file it was due to a reasonable cause and not to willful neglect." The sentence is in the conjunctive. Both conditions must exist. There must have been a filing (though late) of a return and there must have been reasonable cause for the failure to file on time. Here the stipulation is that no returns were filed for the years 1920 to 1927, inclusive. The stipulated facts do not make clear whether the form filed in 1927 related to one year only or to all previous years, but even if such claim for exemption were filed for the entire period, in our opinion such filing would not be equivalent to filing a return required by the statute. The statute is clear and definite that a *return* must be filed to entitle taxpayer to relief from penalties. Petitioner, therefore, fails to meet one of the two conditions prescribed as prerequisite for relief. The action of respondent in adding 25 per centum of the amount of the tax to the deficiencies determined by him is approved.

Reviewed by the Board.

*Judgment will be entered for the respondent.*

---

SEAWELL, dissenting: I do not agree with so much of this opinion as approves the addition of a penalty to the tax for any year, especially for the year 1927.