WILLIAM W. VAUGHAN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 67843. Promulgated November 8, 1934.

*Albert S. Wright, Esq.*, and *William M. Sperry, Esq.*, for the petitioner.

*Mason B. Leming, Esq.*, for the respondent.

550

OPINION.

SMITH: The first question for decision is whether the petitioner is entitled to deduct from his gross income the total loss of the partnership business from March 19, 1929, to the end of the year. In his return the petitioner deducted only 60 percent of such loss, which was the amount of the loss allocated to him on the partnership return filed. He now makes the contention that, inasmuch as the operations of the partnership to December 31, 1929, resulted in a loss, he is entitled to deduct the entire amount of the loss by reason of the provisions of the partnership contract that the other partners " shall not be obligated to contribute to any partnership loss except out of such profits as they shall have received or be entitled to over and above the amount of their respective drawing accounts."

The respondent has determined that the business of Vaughan & Co. for the period March 19 to December 31, 1929, was operated at a loss of $63,989.89. This loss resulted from closed and completed transactions. Under the contract which the petitioner had with Burns and Toomey that loss was the petitioner's loss. Burns and Toomey were not required to bear any portion of it. If, in subsequent fiscal periods, the business was operated at a profit, the petitioner was required to report the profits distributable to him. But the result of future operations would not affect the result of opera-

tions for the period in question in this proceeding. The petitioner's contention that he is entitled to deduct from his gross income the total loss of Vaughan & Co. for the period March 19 to December 31, 1929, is sustained.

The second question in issue is the right of the petitioner and of the partnership to use inventories at market value in the computation of their respective net incomes. The evidence shows that for years prior to 1929 the petitioner had made his returns by the use of inventories at market value and that his returns had been checked by revenue agents and no question raised as to his right to compute net income upon the basis of such inventories, even though the returns did not show that the net income had been computed by the use of inventories. The respondent has disallowed the use of inventories on the basis of market value for the year 1929 upon the ground that neither the petitioner nor Vaughan & Co. were dealers in securities within the contemplation of the Commissioner's regulations.

Section 41 of the Revenue Act of 1928 provides in part:

SEC. 41. GENERAL RULE.

The net income shall be computed upon the basis of the taxpayer's annual accounting period (fiscal year or calendar year, as the case may be) in accordance with the method of accounting regularly employed in keeping the books of such taxpayer; but if no such method of accounting has been so employed, or if the method employed does not clearly reflect the income, the computation shall be made in accordance with such method as in the opinion of the Commissioner does clearly reflect the income. * * *

Section 22 (c) of the same act provides:

(c) *Inventories.*—Whenever in the opinion of the Commissioner the use of inventories is necessary in order clearly to determine the income of any taxpayer, inventories shall be taken by such taxpayer upon such basis as the Commissioner, with the approval of the Secretary, may prescribe as conforming as nearly as may be to the best accounting practice in the trade or business and as most clearly reflecting the income.

Pursuant to the last cited provision of the statute the respondent has prescribed article 105 of Regulations 74, which reads as follows:

ART. 105. *Inventories by dealers in securities.*—A dealer in securities, who in his books of account regularly inventories unsold securities on hand either—
   (a) At cost;
   (b) At cost or market, whichever is lower; or
   (c) At market value,
may make his return upon the basis upon which his accounts are kept; provided that a description of the method employed shall be included in or attached to the return, that all the securities must be inventoried by the same method, and that such method must be adhered to in subsequent years, unless another be authorized by the Commissioner. For the purpose of this rule a dealer in securities is a merchant of securities, whether an individual, partnership, or corporation, with an established place of business, regularly

engaged in the purchase of securities and their resale to customers; that is, one who as a merchant buys securities and sells them to customers with a view to the gains and profits that may be derived therefrom. If such business is simply a branch of the activities carried on by such person, the securities inventoried as here provided may include only those held for purposes of resale and not for investment. Taxpayers who buy and sell or hold securities for investment or speculation and not in the course of an established business, and officers of corporations and members of partnerships who in their individual capacities buy and sell securities, are not dealers in securities within the meaning of this rule.

The claim of the petitioner that he is entitled to compute his net income for the calendar year 1929 upon the basis of inventories at market value on December 31, 1929, is not sustained. The evidence is conclusive that on and after March 18 the petitioner was not a merchant in securities as an individual. He did not buy and sell securities as a dealer in securities after the creation of the partnership.

In *Estate of Harry E. R. Hall*, 29 B. T. A. 1255, we held that a specialist on the New York Stock Exchange was entitled to compute income by the use of inventories at market value. In *James B. Lowell*, 30 B. T. A. 1296, upon somewhat different evidence, we reached a contrary conclusion. Cf. *Alfred E. Hamill*, 30 B. T. A. 955. In the circumstances of this case we do not find it necessary to attempt to distinguish those cases. For here, the partnership has not complied with the respondent's regulations with respect to the filing of a return on an inventory basis. The respondent's regulations, article 105 of Regulations 74, are specific that dealers in securities may make their returns upon the basis of inventories " provided that a description of the method employed shall be included in or attached to the return." In *Northeastern Surety Co.*, 29 B. T. A. 297, we approved the above article as being " reasonable, and designed to carry out fairly the terms and intent of the statute." The partnership return filed for Vaughan & Co. for its fiscal period ended December 31, 1929, not only did not show the basis upon which inventories were taken, but failed to show that the net income was computed upon an inventory basis. The spaces on the return form after the titles " Inventory at beginning of year " and " Less inventory at end of year " were left blank. The respondent contends that this failure of the partnership to comply with his regulations is sufficient ground for denying to the partnership its present contention. We are of opinion that the position of the respondent is well taken. As stated by the Supreme Court, " Men must turn square corners when they deal with the Government." *Rock Island A. & L. Co.* v. *United States*, 254 U. S. 141.

We can not find in the present proceeding that the use of inventories is necessary in the determination of the net income of either

the petitioner or the partnership. The respondent is not attempting to tax the petitioner upon any greater net income than would be obtained by taxing him upon net income obtained by the use of inventories on the basis of cost. The petitioner is simply claiming the benefit of the deduction from gross income of a shrinkage in the value of securities not sold. This contention of the petitioner is not sustained.

The final point in issue is whether the petitioner is entitled to be taxed under the capital gains provision of the statute, section 101 of the Revenue Act of 1928, upon the gain of $1,252,200.84 realized from the sale of 3,500 shares of Corn Exchange Bank & Trust Co. stock. The respondent has disallowed the claim of the petitioner upon this point. On brief the respondent contends that the petitioner at all times held the stock "primarily for sale whenever he could get his price therefor."

Section 101 (c) (8) of the Revenue Act of 1928 provides:

(8) "Capital assets" means property held by the taxpayer for more than two years (whether or not connected with his trade or business), but does not include stock in trade of the taxpayer or other property of a kind which would properly be included in the inventory of the taxpayer if on hand at the close of the taxable year, or property held by the taxpayer primarily for sale in the course of his trade or business. * * *

The last clause of the above quoted definition of "capital assets" first appeared in the Revenue Act of 1924. The reason for the addition of this clause to the definition was explained by Chairman Green of the Committee on Ways and Means, in his report accompanying H. R. 6715, as follows:

The last part of the definition of capital assets is changed to remove any doubt as to whether property which is held primarily for resale constitutes capital assets, whether or not it is the type of property which under good accounting practice would be included in the inventory. [Report 179, 1st Sess., 68th Congress.]

A similar explanation is found on page 18 of "Statement of Changes" made in the Revenue Act of 1921 by H. R. 6715 and reasons therefor prepared for the use of the Committee on Finance, March 6, 1924, which incorporates the preceding excerpt from Mr. Green's report. In *John M. Welch, Sr.*, 19 B. T. A. 394; affirmed upon the point in question in 50 Fed. (2d) 1085, the Board held that an individual who owned real estate, which, in the ordinary course of his business as a real estate dealer, he was endeavoring to sell, could not claim that profits arising from the sales of such land were capital assets, even though they had been owned for a period of more than two years.

The question here is whether the petitioner, who was a stock broker, held the bank shares in question for sale in the ordinary

course of his trade or business. The petitioner testified that his father was a director of the Corn Exchange Bank and that he made his first purchases of stock in that bank more than 20 years ago; that when his father died in 1920 he inherited most of the shares of stock in the bank which he owned in 1929; and that he had exercised rights to acquire, and had acquired, additional shares of stock whenever they had been issued by the bank. The par value of the shares was reduced from $100 to $20 per share in 1929 and the petitioner received five shares for each share then held. The petitioner never considered his investments in the bank stock as in any wise connected with his brokerage business; the shares were not for sale by him. He testified:

I heard quite a number of rumors [in 1929] that the City Bank were going to buy the Corn Exchange out. I was going away on vacation, and I was down in Chesapeake Bay, got an evening paper and saw that the City Bank had bought control of the Corn Exchange Bank; but when I left, four weeks before that, Mr. Frew told me that there was no chance of it. I came back and I didn't want to be a party to anything with the City National Bank, and when they booted the price * * * high enough, I sold my stock.

Q. Did you ever buy any of it back?

A. To my sorrow, yes, sir.

Q. And what was the occasion of that?

A. When the City Bank refused to go through with the contract.

Q. In buying all this Corn Exchange Bank stock, what was your purpose in buying it? * * * were you buying it for resale or investment, or for what purpose?

A. Sentimental; my father was connected with it for a great many years.

Q. Did you buy it with the intention of keeping it or selling it?

A. I gave my office a price at some time, if I lived long enough, they could sell it.

The evidence clearly shows that after the petitioner, on or about March 19, 1929, made the agreement with Burns and Toomey whereby they were to receive certain percentages of the profits of the business, the petitioner was not a dealer in securities. All of his activities after March 18 were connected with the business of Vaughn & Co. He was not engaged in business as an individual. The evidence is conclusive that the shares of bank stock were not held primarily for sale by the petitioner "in the course of his trade or business." The petitioner's contention that the profit realized from the sale of the shares is taxable as capital net gain is sustained.

Reviewed by the Board.

*Judgment will be entered under Rule 50.*