THE SAVINGS FEATURE OF THE RELIEF DEPARTMENT OF THE BALTIMORE AND OHIO RAILROAD COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 59486, 61156. Promulgated March 29, 1935.

*Hugh C. Bickford, Esq., George Dobbin Penniman, Esq.,* and *R. Kemp Slaughter, Esq.,* for the petitioner.

*Allin H. Pierce, Esq.,* and *Irving M. Tuller, Esq.,* for the respondent.

OPINION.

Murdock: The petitioner makes but one contention before the Board. That contention is that it is exempt from tax. No other issue or question will be decided. The Commissioner has determined that the petitioner is an association within the meaning of that term as used in the statutory definition of the word " corporation." See section 1 of the 1918 Act, section 2 (a) (2) of the 1924 and 1926 Acts, and section 701 (a) (2) of the 1928 Act. He cites in this connection *A-C Investment Association*, 24 B.T.A. 582 (reversed by the Court of Appeals of the District of Columbia, 68 Fed. (2d) 386, on the exemption question), and *Sears, Roebuck & Co. Employees' Savings & Profit Sharing Pension Fund* v. *Commissioner*, 45 Fed. (2d) 506 (reversing 17 B.T.A. 22). " The petitioner concedes that under recent decisions of the Board of Tax Appeals and the courts, the association is probably the technical equivalent of a corporation for tax purposes "; it nowhere argues that it is not an association within the meaning of the applicable statutes; and, consequently, the Board expresses no view upon this point. Neither party makes any contention that the petitioner is not properly before the Board. The petitioner once suggested, but did not plead or argue, that it might be exempt as a labor organization. Its pleadings raise the issue of whether or not it is exempt as a cooperative bank without capital stock organized and operated for mutual purposes and without profit, but this point was not argued. The parties have stipulated that if the petitioner is not exempt from tax, then the Commissioner has correctly determined the deficiencies and penalties. It is quite clear from the record and the briefs that the only question submitted for discussion and decision is the question of whether or not the petitioner is exempt from tax, either because it is a mutual savings bank not having a capital stock represented by shares, or because it is a domestic building and loan association substantially all of the business of which is confined to making loans to members.[1] If it appears

---

[1] The applicable provisions of the revenue acts are found in subdivisions 2 and 4 of section 231 of the Acts of 1918, 1921, 1924, and 1926 and of section 103 of the Act of 1928. The language, which is as follows, is the same in all of these acts except that the words " substantially all the business of which is confined to making loans to members " do not appear in the 1918 Act: " The following organizations shall be exempt from taxation under this title * * * (2) Mutual savings banks not having a capital stock represented by shares; * * * (4) Domestic building and loan associations substantially all the business of which is confined to making loans to members; * * * "

that the petitioner is exempt under one of the provisions mentioned, of course, discussion of the other becomes unnecessary.

The Commissioner made a brief oral argument at the hearing in lieu of filing a brief. In support of his holding that the petitioner is not exempt as a mutual savings bank, he first said that there were consistent rulings of the Bureau contrary to the contention of this petitioner which were controlling in view of the reenactments of Congress. He next relied rather strongly upon the decision of the Board in *A-C Investment Association*, 24 B. T. A. 582, and also quoted section 40, article 11 of the Maryland Code as having some application. Thereafter, the decision of the Board in the *A-C Investment Association* case was reversed by the Court of Appeals for the District of Columbia, *A-C Investment Association* v. *Helvering*, 68 Fed. (2d) 386. The court in that case reviewed the departmental rulings. It showed that the early construction had been to exempt the petitioner in that case, but later a contrary ruling was made. It then held that, since there was this inconsistency in the departmental rulings, the decision must turn upon some other point. Immediately after that decision the departmental rulings were again reversed and the decision of the court in the *A-C Investment Association* case was followed. See G. C. M. 13602, Internal Revenue Bulletin No. 46, vol. XIII, p. 2, which revoked prior rulings of the Bureau (discussed by the court in its opinion) " in so far as they hold that mutual savings banks (which otherwise meet the requirements of the Federal exemption statute) should be denied exemption because they are not organized under a State law and/or do not operate subject to State supervision, notwithstanding the State of their domicile imposes no such restrictions on mutual savings banks " and held that " mutual savings banks not organized or operated under State laws and supervision in a State which recognizes the right of individuals to carry on a banking business and makes no provisions for supervising such organizations are exempt from Federal income tax." See also Regulations 86, art. 101(2)–1.

After the decision of the Board in the *A-C Investment Association* case had been reversed, the Commissioner filed a short brief in which he unsuccessfully attempted to point out that the court's decision would not apply to the present case because the laws of Maryland differed from the laws of Texas, under which the A–C Investment Association operated. The facts in the present case differ somewhat from the facts in the *A-C Investment Association* case and from the facts discussed in G.C.M. 13602. But the differences strengthen this petitioner's case and do not make the reasoning in those two decisions inapplicable here. Attention is called in that brief to additional sections of the Maryland Code to show, apparently, that the peti-

tioner is not a savings bank within the meaning of the Maryland statutes quoted, sections 31, 36, 38–41, article 11, Bagby's Annotated Code of 1924. The petitioner does not confine its operations to the State of Maryland. It operates in all of the territory along the lines of the Railroad from New York to Chicago and St. Louis. Maryland is but a relatively small part of that area. However, since the respondent relies entirely upon the laws of Maryland, we have examined the statutes of that state to which he has called our attention. Those statutes provide methods for forming mutual savings banks and contain a number of provisions for state supervision of savings institutions. The provisions for state supervision refer principally to corporations. The petitioner was not incorporated. It was not organized under any of the provisions of the statutes to which the respondent refers. Most of those provisions have no application whatever to the petitioner. Section 40, already referred to, provides that certain associations, not authorized to conduct a business of a savings bank, shall not advertise or put forth a sign as a savings bank or savings institution. We need not decide whether this provision applies to the petitioner, for, in any event, the petitioner did not advertise or put forth a sign as a savings bank or savings institution. It was able to carry on its activities without such sign or advertisement. The petitioner does not rely upon any of the provisions quoted for authority to conduct its business. Those statutes seem to recognize that there may be unincorporated savings banks which are subject to no state supervision. Cf. *Weer* v. *Page*, 155 Md. 86; 141 Atl. 518. The petitioner has operated for many years without being called to account for violation of any of the laws of the State of Maryland or of any other state in which it operated so far as this record shows. None of the provisions referred to seems to interfere in any way with the conduct of the petitioner's business or require it to submit to state supervision. The right to engage in the banking business was open to all under the common law. *State* v. *Scougal*, 3 S. D. 55; 51 N. W. 858. There is, in the statutes referred to, no justification for denying the petitioner the exemption which it claims.

Thus the principal arguments advanced by the respondent in support of his determination have failed him. Furthermore, the facts show that the petitioner actually carried on a very extensive business of the kind which Congress must have intended to exempt from tax under the provisions of subdivision 2 of section 231 of earlier acts and of subdivision 2 of section 103 of the Act of 1928. *A–C Investment Association* v. *Helvering, supra.* Thousands of persons scattered all along the lines of the Railroad were depositors. Their separate deposits were relatively small in amount. These depositors were thus assisted in saving. The deposits were generally subject

to withdrawal upon demand. They bore interest. Passbooks were used in which deposits, interest, and dividends were credited and withdrawals debited. None but the depositors benefited from the earnings of the petitioner. They alone were entitled to the current earnings and surplus assets accumulated. The organization did not lack mutuality. The deposits and accumulated surplus were invested by those in charge of the petitioner much in the same way that any savings bank would invest its funds. A large part was invested in well secured mortgage loans, another part was invested in bonds, and a part was in the form of a cash deposit with the Railroad. Some investments were made in stock of corporations. If such an investment was not a proper one for a savings institution, no point has been made of that circumstance. The court in *A–C Investment Association* v. *Helvering, supra,* has discussed the history and purpose of the provisions exempting mutual savings banks from tax and has reviewed a number of authorities. Nothing would be accomplished by further discussion or review here. The court has held, and we think rightly so, that it is immaterial in the decision of such cases that only certain classes could become depositors. The Commissioner has followed this interpretation by the court in promulgating regulations under the Revenue Act of 1934. See Regulations 86, art. 101(2)–1. Thus the petitioner was in fact a mutual savings bank not having a capital stock represented by shares within the meaning and intent of the applicable statute and is, therefore, entitled to the exemption.

The respondent in his brief sets forth figures representing the income which the petitioner derived from the printing plant during each of the years 1919 to 1926, inclusive, and, in a parallel column, figures which he said represented the petitioner's entire net income for each of those years. He then argued from a comparison of the two columns that the chief source of income earned by the petitioner during that period was not from the operation of a savings bank business but rather from the operation of a printing plant, and Congress did not intend to exempt such income from tax. However, the respondent is mistaken as to the facts. The figures for total net income upon which he bases this argument are entirely incorrect. They represent not net income, but the balance which the petitioner carried to surplus in each of the years after paying interest and dividends to its depositors. The amounts were but a small part of the net income of the petitioner for each of the years. Although it is true that the conduct of a printing plant is not a usual or incidental function of an ordinary savings bank, nevertheless, the petitioner need not lose its exempt character during the years 1919 to 1926, inclusive, merely because it operated this printing plant. Cf. *Trinidad*

v. *Sagrada Orden de Predicadores*, 263 U. S. 578. The Railroad was the petitioner's only customer for printing and obviously adopted this plan as an indirect means of reimbursing the petitioner for its expenses. The earnings from the printing plant never equaled the petitioner's expenses of operation. In 1926 this indirect plan was abandoned and thereafter the Railroad paid directly all of the expenses of operation which the petitioner otherwise would have had to pay itself. The fact that the Railroad thus voluntarily aided and encouraged the petitioner in no way interferes with the petitioner's right to receive the exemption by which Congress also intended to encourage its activities.

The respondent further contends that exemption must be denied the petitioner because it failed to comply with the provisions of his regulations entitled "Proof of exemption." [2] The contention of the respondent suggests a number of questions, including what the effect is of the provisions of his regulations entitled "Proof of exemption"; whether the provisions are merely directory, or are mandatory, so that the filing of proof of exemption with the Commissioner is thus made a condition precedent to the right of exemption; the extent, if any, to which the petitioner has complied with the regulations; and what the effect is of what it has done. Although some subdivisions of the revenue acts specifically authorize the Commissioner to make regulations on the subject therein dealt with, yet there is no specific authorization for regulations relating to exemption of mutual savings banks. Cf. *William W. Vaughan*, 31 B.T.A. 548. Authority for the provisions of the regulations relating to "Proof of exemption" must be found in the general authority granted in each revenue act to the Commissioner to make all needful rules and regulations for the enforcement of the provisions of the

---

[2] This provision is contained in article 511 of Regulations 45, 62, 65, and 69, and in article 521 of Regulations 74. These articles, in so far as they related to mutual savings banks are substantially identical. Article 511 of Regulations 45 is in part as follows:

"*Proof of exemption.*—In order to establish its exemption, and thus be relieved of the duty of filing returns of income and paying the tax, it is necessary that every organization claiming exemption * * * file an affidavit with the collector of the district in which it is located, showing the character of the organization, the purpose for which it was organized, the sources of its income and its disposition, whether or not any of its income is credited to surplus or may inure to the benefit of any private stockholder or individual, and in general all facts relating to its operations which affect its right to exemption. To such affidavit should be attached a copy of the charter or articles of incorporation and by-laws of the organization. Upon receipt of the affidavit and other papers by the collector, he will inform the organization whether or not it is exempt. If, however, the collector is in doubt as to the taxable status of the organization, he will refer the affidavit and accompanying papers to the Commissioner for decision. When an organization has established its right to exemption, it need not thereafter make a return of income or any further showing with respect to its status under the law, unless it changes the character of its organization or operations or the purpose for which it was originally created. Collectors will keep a list of all exempt corporations, to the end that they may occasionally inquire into their status and ascertain whether or not they are observing the conditions upon which their exemption is predicated. * * * *"

act. The revenue acts did not confine the exemption to those banks which might file proof of exemption with the Commissioner. The exemption was intended to encourage savings banks. *A-C Investment Association* v. *Helvering, supra.* The words of article 511, to one having these things in mind, do not seem to make the filing of "proof of exemption" a condition precedent to the right of exemption. The provisions of this article are directory rather than mandatory in this respect. They require those claiming exemption from tax to supply the Commissioner with information showing their exempt character so that he may be satisfied that they are actually exempt. The article indicates in a general way the kind of proof which should be submitted, but no certain form is specified. No time for filing it is mentioned. No special emphasis is placed upon any particular annual period. There is recognition that changes in the character of such organizations will not be frequent. The Commissioner, in effect, says in these articles, that each organization claiming exemption, if it wants him to agree that it is exempt, must file proof of its exemption with him. The penalty for failure to comply seems to be that the Commissioner, if he has doubts of the exempt character of any organization, may assess the tax and put that organization to the trouble of proving elsewhere its right to exemption. That is what has happened in the case of the present petitioner, but the latter has now proved its right to exemption. The question of whether the Commissioner had the right to make the filing of proof of exemption a condition precedent to the right of exemption, need not be decided in this case. Even if the words of article 511 are to be interpreted as making the filing of proof of exemption a condition precedent to the right of exemption, still decision in this case must be for the petitioner. The petitioner, in March 1923 gave the Commissioner certain proof of its exempt character which complied at least in part with the regulations. Thereafter, more than eight years elapsed before the Commissioner made any move to assess a tax against the petitioner. Under such circumstances, a holding that the petitioner had forever forfeited its right to exemption would not be justified. Thus, whatever the correct interpretation of article 511 may be, the provisions of that article and its later counterparts afford no proper basis for denying exemption to the present petitioner.

Reviewed by the Board.

*Decision will be entered for the petitioner.*