Andrew Siarto v. Commissioner.
Siarto v. Commissioner
Docket No. 4021.
United States Tax Court
1947 Tax Ct. Memo LEXIS 342; 6 T.C.M. (CCH) 3; T.C.M. (RIA) 47000; January 7, 1947
Edgar W. Pugh, Esq., 3353 Penobscot *343 Bldg., Detroit 26, Mich., for the petitioner. A. J. Friedman, Esq., for the respondent. HILL Memorandum Findings of Fact and Opinion HILL, Judge: This proceeding involves a deficiency in petitioner's income tax liability for the calendar year 1940 in the amount of $6,993.13. The first of the three questions presented is whether respondent properly included in petitioner's taxable income certain partnership profits received by petitioner's wife. The other two issues are whether respondent erred in failing to allow petitioner a deduction for certain bonus payments to partnership employees and a deduction for legal expenses. The case was submitted upon a stipulation of facts, oral testimony and documentary evidence offered at the hearing. The facts stipulated are so found. Findings of Fact The petitioner is an individual residing in Detroit, Michigan. His income tax return for the calendar year 1940 was filed with the collector of internal revenue for the collection district of Michigan. Petitioner and Fred W. Gollbach, Sr., were equal co-partners in the firm of Ace Tool & Die Company, hereinafter referred to as the Company, which was engaged in the business of making *344 jigs, gauges and special machinery at 3801 Trenton Avenue, Detroit, Michigan. In 1940 the firm employed about 35 persons, most of whom were highly skilled mechanics. Issue 1. On December 13, 1937, the Circuit Court for the County of Wayne, Michigan, entered a decree divorcing petitioner and Marie Siarto. The decree provided that the plaintiff, Marie, should have the custody of the four minor children born to her and petitioner and that for the remainder of Marie's natural life petitioner should pay her annually for the support and maintenance of herself and of the children an amount equal to one-third of his 1937 income. Incorporated by reference into the decree was an agreement between petitioner and Marie dated September 30, 1937. This agreement provides for alimony payments as specified in the decree and further provides that petitioner agreed to pay Marie $1,000 in cash to be credited on his 1937 alimony payments, to transfer to her 500 shares of stock in a certain corporation, to give her a promissory note in the amount of $2,350 to keep in good standing certain life insurance policies, to make a will bequeathing to Marie and their living children two-thirds of his estate and *345 to execute to her a quitclaim deed of his interest in certain realty. The day after the entry of the divorce decree petitioner married his second wife, Meta Siarto. Petitioner made alimony payments to Marie during 1937 according to the terms of the decree, and in preparing his income tax return for that year he deducted the amounts of those payments. Marie reported the alimony as taxable income to her. On July 25, 1939, the internal revenue agent in charge at Detroit notified petitioner that the deduction of the alimony was disallowed. Petitioner filed a protest with the agent's office reading in pertinent part as follows: The taxpayer contends that the decree referred to in Agents report, does not fully disclose the intent of negotiations between himself and his former wife, Marie Siarto. The taxpayer contends that one third of his interest in partnership known as Ace Tool & Die Co. and income therefrom was irrevocably given to said Marie Siarto and that consent to do so was obtained from other member of partnership, Mr. Fred W. Gollbach. Apparently attorney for Mrs. Marie Siarto failed to incorporate above provisions in the decree and taxpayer further contends that both he *346 and Mrs. Marie Siarto were under impressions that these provisions were incorporated in decree. In view of bona fide intent of the parties to above decree, the taxpayer respectfully requests that findings of Revenue Agent be set aside. The findings of the examining agent were not set aside and petitioner paid the deficiency which had been determined. The tax paid by Marie on the alimony payments received by her was refunded to her after examination of her return. As a result of the discussions concerning petitioner's 1937 tax liability, meetings were arranged in the latter part of October 1939 between petitioner, Marie, their daughter Helen, the Company superintendent and an accountant in the employ of petitioner. At these meetings it was agreed that petitioner would assign to Marie one-third of his one-half interest in the Company, Marie had been told by petitioner that Gollbach would have to consent to the assignment and her attorney had told her that she might incur a loss as the owner of an interest in the business. Petitioner's accountant suggested to Marie the form of the following letter which she wrote to petitioner: Following our recent conference regarding settlement *347 of monthly maintenance, I hereby accept your offer of assignment of one third of your interest in Ace Tool & Die Company, subject to following conditions: 1. The assignment is to be absolute with no reservations. Any income accrued to assigned equity must be placed at my disposal at all times without any qualifications whatsoever. 2. You agree to bear all costs of transfer on assignment including gift taxes, Federal and State. 3. By virtue of the assignment I shall be entitled to full partnership rights. This matter was previously discussed with you and Mr. Gollbach in presence of Mr. Leyhan and agreed upon. For and in consideration of above I agree to waive my claims for alimony or maintenance resulting from divorce action now closed. On January 2, 1940, petitioner executed to Marie an assignment, reading in part as follows: WHEREAS, on this date, the party of the first part [petitioner] does hereby assign one-third of all his right and interest in a business operated under the assumed name of Ace Tool & Die Company, with offices at 3801 Trenton Avenue, Detroit, Michigan, to said party of the second part [Marie]; and WHEREAS, it is desired to assign one-third of *348 all proprietary rights and interest to the said party of the second part. The said Andrew Siarto, party of the first part, acknowledges that Marie Siarto, party of the second part, is entitled to one-third of one-half distributable interest in said business. It is fully understood and agreed by the said Marie Siarto, that her interest in the business is subject to any liabilities which may accrue against the business by the operation of the law. The said party of the second part is not liable in any amount in excess of the interest assigned or which may later accrue to her and be left in the business. On the same day petitioner and Marie executed an agreement as follows: WHEREAS, Andrew Siarto, in consideration of the sum of one dollar ($1.00) and other good and valuable consideration, the receipt whereof is hereby acknowledged, has assigned to Marie Siarto one-third of his interest in the partnership operated under the assumed name of Ace Tool & Die Company; THEREFORE, each of the parties hereto agrees that the business shall continue to be operated under the assumed name of Ace Tool & Die Company, with offices at 3801 Trenton Avenue, Detroit, Michigan. The net worth of Andrew *349 Siarto's interest in the partnership at the beginning of business on January 2, 1940 was $20,000.00. A capital account shall be set up showing the amount transferred to Marie Siarto as being $6,666.67. The right to participate in the profits of the business and the liability resting upon each on account of any losses which might be incurred, are as follows: Andrew Siarto
Two-thirds
Marie Siarto
One-third
It being mutually understood and agreed that before any profits are divided, all expenses of any nature whatsoever in connection with the assumed name business are to be paid. It is further agreed, that for convenience one-half of the profits earned by Ace Tool & Die Company shall be credited to Andrew Siarto et al. or Siarto and Siarto on the books of Ace Tool & Die Company, and said profits to be distributed subsequently in accordance with this agreement. It is mutually agreed that in the event of the death of either Andrew Siarto or Marie Siarto, the survivor shall be entitled to buy the deceased's interest, in the business, at the then net worth after adjustment for profit or loss to date of death. Soon after the execution of the assignment, an *350 account was set up on the books of the Company showing that Marie had an interest in the firm. Marie received money directly from the Company in 1940 and used some of this money to run her household. She received auditor's reports of the Company's financial status every three months. She performed no services for the Company and was not active in its management. Her daughter, Helen, worked for the Company and kept her informed of its operations. The partnership return of income for the Company for the taxable year 1940 was signed by petitioner. It shows that the Company had gross receipts in the amount of $322,926.37; that labor, supplies and materials had cost $201,681.39, and that net income amounted to $76,969.78. Schedule J shows $40,478.64 as distributable to "Andrew Siarto et al" and "$36,491.14" as distributable to "Fred W. Gollbach et al." Petitioner's income tax return for the calendar year 1940 shows as his only item of income $24,365.86 from Siarto & Siarto, Detroit, Michigan. A partnership return of income for the same calendar year was filed by Siarto & Siarto, 3801 Trenton, Detroit, Michigan, signed by petitioner. This return shows as "income from other partnerships" *351 $40,478.64 from the Ace Tool & Die Company, Detroit, Michigan, and this is the only reported income. A deduction of $3,929.85 is taken and the partners' distributive shares of the net income are listed under Schedule J as $24,365.86 to Andrew Siarto and $12,182.93 to Marie Siarto. Marie Siarto's income tax return for 1940 shows her address as 3801 Trenton Street, Detroit, Michigan, and reveals as the single item of income taxable to her $12,182.93 from Siarto & Siarto. On March 13, 1941, petitioner as donor signed and filed a gift tax return indicating that he had donated "one-third of donor's one-half interest in personal property of Ace Tool & Die Company located at 3801 Trenton Street, Detroit, Michigan", to Marie Siarto on January 2, 1940. The value of the gift was stated to be $7,302.80. On March 13, 1941, Marie signed a donee's information return indicating that she received the one-third of the donor's one-half interest in the Company and that the approximate value of the gift was $7,300. Gollbach commenced litigation against petitioner in the Chancery side of the Circuit Court for the County of Wayne, State of Michigan, on May 29, 1940, the proceeding being entitled "Fred *352 W. Gollbach, Plaintiff v. Andrew Siarto, Defendant." In his bill of complaint Gollbach alleged that he and petitioner were partners of equal interest in the Ace Tool & Die Company, and that his interest was not less than 50 per cent, that from October 10, 1939, petitioner had operated the business and had withdrawn large sums of money from it but had withheld all money from the plaintiff and refused to render an accounting of the financial condition of the Company or to deliver to plaintiff certain personal property of his which had been left on the Company's premises. Gollbach further alleged that he was apprehensive of the loss of great sums of money and his interest in the business as a result of petitioner's management of it and he prayed that petitioner be enjoined from disposing of or encumbering the assets of the Company and that a receiver be appointed, the partnership dissolved and an accounting be had. In his answer, verified on June 6, 1940, petitioner alleged that "the said plaintiff from on or about the 12th day of October, 1939 to the present time has been totally incapacitated, and that from said 12th day of October, 1939 to the present time, has not only been physically *353 incapacitated but mentally incapacitated, and unable to devote any time to the business of said copartnership, and his mental condition was such that he was unable to perform any business judgment or transaction of any kind * * *." Numerous pleadings, affidavits and motions were filed by petitioner in that litigation as defendant and later as co-receiver of the Company throughout which it was alleged by him that he and Gollbach were the partners in the Company. These documents contain no indication that Marie had any interest in the business. An opinion rendered in the proceeding by the circuit judge on June 18, 1940, also recites that petitioner and Gollbach are co-partners in the business. The disputes between Gollbach and petitioner reached the point that on June 9, 1941, petitioner executed a 30-day option to Gollbach to purchase for $60,000 petitioner's undivided one-half interest in the Company, which is described as a co-partnership consisting of petitioner and Gollbach. The option agreement contained a provision that petitioner agreed to obtain the signature of Marie to any instruments that might be executed pursuant to the option. On July 8, 1941, petitioner and Marie executed *354 to Fred W. Gollbach, Sr., and Fred W. Gollbach, Jr., a bill of sale for the one-half interest in the Company. At the same time there was executed and delivered by petitioner, his then wife, and Marie a quitclaim deed to the Gollbachs of certain real estate owned by the Company. On July 18, 1941, petitioner and Gollbach, Sr., signed a notice of discontinuance of the business of Ace Tool & Die Company and filed such notice in the office of the clerk of Wayne County at Detroit, Michigan. By stipulation of counsel for both parties and at the instigation of counsel for petitioner the decree of divorce between petitioner and Marie was amended on June 5, 1946, the amended decree providing, in so far as pertinent, as follows: Property Settlement All provisions of the decree of Divorce dated December 13, 1937 and the Agreement of September 30, 1937, having to do with the payment of certain sums each week by the defendant to the plaintiff, either for herself or for the support of any of the parties' children, are declared to be null and void as of January 2, 1940, and any liability of the defendant thereunder, if any, is cancelled. * * *
The Agreement of the plaintiff, MARIE SIARTO, *355 and the defendant, ANDREW SIARTO, dated January 2, 1940, under which the defendant assigned to plaintiff one-third (1/3) of his interest in Ace Tool & Die Company, the proceeds from the sale of which plaintiff used to purchase a one-third (1/3) interest in Siarto Machine and Tool Company, is ratified and confirmed, and the acceptance of such interest by the plaintiff, plus such sums as she has received and will receive as the owner of such interest, is in full settlement and determination of all claims of any kind and nature which she might have against the defendant for alimony, support, or otherwise under the Agreement dated September 30, 1937 and under the Decree of Divorce, and in lieu of any claims for alimony, support or maintenance, and all rights of the plaintiff to any claims for such alimony, support or maintenance from the defendant which might have accrued to the plaintiff since January 2, 1940, the date of the Agreement, are hereby waived by her. * * *
Alimony IT IS FURTHER ORDERED, ADJUDGED and DECREED that the defendant shall pay to plaintiff no alimony or any money for the support or maintenance of any child of the parties hereto. In determining the deficiency *356 respondent taxed to petitioner all of the profits of the partnership other than those attributable to the 50 per cent distributive share of the Gollbachs. Respondent explained the adjustment as follows: It is held that you were a partner owning a 50 percent interest in the business conducted under the name "Ace Tool and Die Company" during the taxable year 1940. Therefore, $43,303.77 of the net income of such partnership is taxable to you. This amount includes the additional profits of such business distributable to you during the year 1940 for extra services rendered during that year. Since you reported only $24,365.86 from this source $18,937.91 has been added to your taxable income. The petition in this proceeding was filed February 14, 1944. Opinion In paragraph 5 (a) of the petition, which is unamended as to this issue, petitioner states as a fact upon which he relies that "The Ace Tool & Die Company, an assumed name business, operated as a copartnership for the calendar year 1940, the co-partners being Fred W. Gollbach, Mrs. Marie Siarto and petitioner. * * * At the hearing, however, petitioner's counsel, in answering respondent's opening statement, said: MR. PUGH: *357 * * * Mrs. Siarto did not become a member of the partnership of Ace Tool & Die Company. She received an assignment of one-third of the interest of Petitioner in the Ace Tool & Die Company. And, in accordance with Michigan law, such an assignment could be made, and such an assignment transferred to the Petitioner a one-third interest in the property interest of the partner Andrew Siarto. There was no necessity for Mr. Goldbach [Gollbach] or anyone else to agree to that assignment. We are not claiming that she was a partner in the Ace Tool & Die Company. We filed a separate return for Mrs. Siarto and for Mr. Siarto. It is plain from those remarks and from petitioner's briefs that he does not now contend that Marie became a partner in the Company. We may say in passing that if such a contention were made we should reject it on the authority of Commissioner v. Tower, 327 U.S. 280, and Lusthaus v. Commissioner, 327 U.S. 293, for we are convinced that petitioner and Gollbach did not intend that Marie should become a partner with them in carrying on the business of the firm. Petitioner relies upon *358 William W. Parshall, 7 B.T.A. 318, and James R. Cray, 7 B.T.A. 322 (both decided in 1927) and points out that the Pennsylvania statute quoted in the Parshall case is identical with the first two of the following paragraphs of the applicable Michigan statute, which is an enactment of the Uniform Partnership Act: § 20.26. Interest of partner in partnership, personal property.] Sec. 26. A partner's interest in the partnership is his share of the profits and surplus, and the same is personal property. (C.L. '29, § 9866.) § 20.27. Same; effect of conveyance or assignment; rights of assignee in management; accounting.] Sec. 27. (1)A conveyance by a partner of his interest in the partnership does not of itself dissolve the partnership, nor, as against the other partners in the absence of agreement, entitle the assignee, during the continuance of the partnership, to interfere in the management or administration of the partnership business or affairs, or to require any information or account of partnership transactions, or to inspect the partnership books; but it merely entitles the assignee to receive in accordance with his contract the profits to which *359 the assigning partner would otherwise be entitled; (2) In case of a dissolution of the partnership, the assignee is entitled to receive his assignor's interest and may require an account from the date only of the last account agreed to by all the partners. (C.L. '29, § 9867.) Petitioner states that the assignment by him to Marie was made in conformity with and pursuant to the quoted statute. As we understand it, petitioner's theory of this case is that the assignment was supported by valuable consideration and by it Marie became the owner of one third of the assets and current net profits of the Company which were attributable to petitioner's 50 per cent interest, and thus in 1940 she was entitled to receive as her own one-sixth of the distributable profits of the partnership for that year. Otherwise stated, the position is that she and petitioner became joint owners (as Siarto & Siarto or as Andrew Siarto et al.) of the 50 per cent partnership interest, that the interest produced some $40,000 of income and that this is the income of each of the joint owners according to their respective shares of ownership. Therefore, he contends respondent erred in taxing to him all of the $40,000. *360 The following portions of the opinion of the Supreme Court in Burnet v. Leininger, 285 U.S. 136, decided in 1932 adversely to the taxpayer, would seem to be a sufficient answer to petitioner's contention: The respondent urges that the assignment to his wife was of one-half of the "corpus" of his interest and that this "corpus" produced the income in question. The characterization does not aid the contention. That which produced the income was not Mr. Leininger's individual interest in the firm, but the firm enterprise itself, that is, the capital of the firm and the labor and skill of its members employed in combination through the partnership relation in the conduct of the partnership business. There was no transfer of the corpus of the partnership property to a new firm with a consequent readjustment of rights in that property and management. If it be assumed that Mrs. Leininger became the beneficial owner of one-half of the income which her husband received from the firm enterprise, it is still true that he, and not she, was the member of the firm and that she had only a derivative interest. Petitioner argues, however, that the Leininger case "is not in point, *361 assuming that Marie Siarto received a proprietary interest in the one-third of the 50% interest assigned to her". This attempted distinction may have been thought by petitioner to be supported by the statement in the Leininger opinion that "It does not appear that there was any attempt to change the ownership of the partnership assets * * *." It is, of course, true that a wife's investment of her independent capital in a business may be evidence that she was intended to be a partner, [1] even though she did not become active in the management of the enterprise. For that reason the quoted statement was made by the Court in concluding that the agreement between Mr. and Mrs. Leininger did not make her a member of the partnership. As is indicated above, the comparable issue is not present in this case. Even if it be admitted that the assignment and agreement pursuant thereto were supported by valuable consideration under the principle of *362 Edmund C. Converse, 5 T.C. 1014, and that they were immediately enforceable under local law regardless of the prolonged delay in amending the divorce decree, it remains true that the capital assets of the Company were still owned by petitioner and Gollbach as tenants in partnership [2] and the use of those assets by the firm produced the income in question. The income was not produced by the mere ownership of "interests" in the business. The evidence leaves in considerable doubt whether Gollbach effectively consented to the assignment, but assuming that he did, we are not persuaded that he thereby agreed that a subpartnership (Siarto & Siarto) replace petitioner as a partner in the Company. This being so, we fail to see how the assignment altered the incidence of the taxing statute as to the distributable income of the partnership. See John G. Scherf, 7 T.C. 346, and cases there cited. *363 Our view is that here as in the Leininger case the substance and intent of the assignment and agreement "cannot be taken to have amounted to more than an equitable assignment of one-half [one-third] of what her husband should receive from the partnership, she in turn agreeing to make good to him one-half [one-third] of the losses he might sustain by reason of his membership in the firm." Under the Michigan statute and the terms of the assignment Marie no doubt became entitled to receive eventually one-sixth of the liquidating distributions of the Company as well as one-sixth of the distributable income, but those rights although immediately enforceable in equity were upon the contract with petitioner and the one-sixth of current net profits of the firm was first partnership income to petitioner before it became the property of Marie. See Hazen v. Warwick, et al., 256 Mass. 302, 152 N.E. 342, construing sections of the Uniform Partnership Act, and George M. Cohan, 11 B.T.A. 743, 756, modified as to other issues, *364 39 Fed. (2d) 540. That the partnership books were made to reflect the amount Marie would probably receive in the event of dissolution of the Company and that income distributions were made to her directly by the Company rather than by petitioner do not convince us otherwise, particularly when we bear in mind that petitioner appears to have been in complete control of the firm. Those procedures may have been, as suggested in the agreement, "convenient" but they did not alter the substantive rights or legal status of any of the parties. To the extent that the Parshall and Cray decisions are inconsistent with the Leininger case, we have not followed them. Carroll E. Donner, et al., 32 B.T.A. 364. We may also point out that as we have done here the Supreme Court considered and decided the Leininger case as though the wife were a stranger to the taxpayer and as though the assignment were effective in all respects that it was intended to be. We hold that respondent did not err in taxing to petitioner all of the partnership net income other than that attributable to the distributive share of the Gollbachs. Findings of Fact Issue 2. In December 1940 petitioner *365 personally paid to the employees of the Ace Tool & Die Company amounts totaling $1,512.50. At that time the Company employed 35 persons and each of these received a payment. The superintendent received $750 and the other employees received sums ranging from $12.50 to $50. These amounts were paid by petitioner in recognition of and as extra compensation for services rendered to the Company. When the bonuses were paid Gollbach was mentally and physically incapacitated and was not active in the business. He was represented in the conduct of the business by an attorney. Petitioner discussed with the attorney the payment of bonuses for 1940 and showed him figures on the proposed amounts thereof. The attorney assented to petitioner's suggestion that petitioner personally pay one-half of the bonuses to which, in his opinion, the employees were entitled and promised to secure from Gollbach, who was then away from Detroit, a decision as to the payment of the remaining one-half. Petitioner heard nothing further from Gollbach or his attorney as to the unpaid one-half. Marie Siarto agreed to bear the expense of one-third of the bonus payments made by petitioner. In July 1941 petitioner organized *366 the Siarto Machine & Tool Company which began operations in December 1941 and in this enterprise he employed 12 of the former employees of the Ace Tool & Die Company, many of whom were highly skilled workmen. The partnership return of income for the Company for 1940 shows a deduction of $9,049.99 as "other deductions authorized by law" and the explanation of this deduction in Schedule F of the return includes an item of $1,512.50 designated as "bonus to employees". No deduction for bonuses was taken on the partnership return of Siarto & Siarto or on the individual return of either petitioner or Marie Siarto. Opinion Referring to the bonuses, the amended petitioner reads that "These amounts were ordinary and necessary business expenses of petitioner." On brief petitioner states that "The bonuses were paid in connection with the ownership of the Ace Tool & Die Company and are an allowable deduction in accordance with section 23 (a) (2) of the Internal Revenue Code." Respondent's position is that petitioner made the payments to induce the Company employees to abandon that employment and to begin work for his new firm. Respondent also states on brief that *367 "in no sense" did the payments constitute ordinary and necessary business expenses for which petitioner could personally take a deduction. In support of respondent's view of the purpose of the payments we have only such inferences as may be drawn from the facts (1) that in July 1941, six months after the date of the payments, petitioner organized a new company and (2) that in the new enterprise, which began operations in December 1941, he employed 12 of the 35 persons who received bonuses. We do not think that these facts or any inferences from them are sufficient to overcome the direct testimony of petitioner and his witnesses and we have accordingly found as a fact that the payments were made in recognition of and as extra compensation for services rendered to the partnership. Neither petitioner nor respondent has cited cases on this issue or made any argument other than as to the facts. We think that on the authority of Flood, et al., v. United States, 133 Fed. (2d) 173, 178, petitioner is entitled to deduct the bonuses paid by him except to the extent that he was to be reimbursed therefor by Marie. See, also, *368 Moir v. United States, 49 Fed. Supp. 331, [and cf. Decker v. United States, 15 AFTR 882]. As to the effect of a right to reimbursement, see Standard Oil Co. of New Jersey, 7 T.C. 1310 (#153 promulgated December 10, 1946). This case is indeed much stronger for the allowance of the deduction than was the Flood case, for the partner-taxpayer there paid the pensions in question several years after the partnership-employer had altogether ceased business operations. The Court concluded that the pensions paid constituted ordinary and necessary expense directly connected with the business of the individual partners even though that business was not in existence at the time of the payments. It was pointed out that if the partnership had been kept alive, made the payments and charged the amounts borne by each partner under the partnership agreement to his share of the proceeds then the partners would have received the tax benefit of the payments. The Court went on to say and conclude as follows: * * * There is no reason why * * * [the] difference in the mere form of the transaction should result in depriving the partners of the benefit of the deduction *369 under § 23 (a). The nature of the payments to the former employees was the same, though the mechanism for making the payments was changed after the partnership was dissolved. The revenue acts do not regard a partnership as a separate taxable entity. Though as a matter of accounting convenience the partnership files an information return, the tax is assessed upon the individual partners. * * * The partners were * * * entitled to take a deduction on their individual returns for their respective shares of the pension payments made to the retired employees out of the trust fund which they set up as a means of honoring their individual assumption of the firm's moral obligation to its faithful employees. We think these observations are pertinent and correct here. The only difference in the cases is that all of Flood's partners contributed to the pensions according to their partnership interests whereas petitioner's partner Gollbach did not, so far as we know, pay any 1940 bonus to the Company's employees. We do not see that this in any way affects the character of the expense to petitioner nor does it, considered along with the other facts, make the expenditures so extraordinary or unnecessary *370 as to take it without the scope of section 23 (a). See Edward A. Pierce, 18 B.T.A. 447. If Gollbach and petitioner had agreed that the partnership pay the amounts in question but charge them all against petitioner's distributive share of the partnership income, the failure to charge similar amounts against Gollbach's share of the profits would not operate to deprive petitioner of the full tax benefit of the payments. Cf. Samuel Kurzman, 8 B.T.A. 412; Clinton G. Edgar, 10 B.T.A. 110; William W. Vaughan, 31 B.T.A. 548, appealed only as to other issues. We do not see as a reason for now denying petitioner such benefit the fact that he made the payment from his personal funds rather than from partnership funds immediately prior to their distribution to him. His economic burden is the same and the payments are no more gifts in the tax sense than if they were made from the funds of the Company. Petitioner may benefit only once from these payments, of course, and if they were used to reduce the amount of profits distributable to him he may not report as income the reduced amount and again take the deduction. *371 Lederer v. Parrish, et al., 16 Fed. (2d) 928. Cf. S. Stanwood Menken, 8 B.T.A. 1062. Since the bonuses obviously were deducted on the Company return it might appear that this is what petitioner is attempting to do, but he urges that in determining the deficiency respondent adjusted the Company's net profit to exclude altogether the bonus deduction. Neither the deficiency notice nor the statement attached thereto reveals whether this is so but if it is, petitioner is entitled to a deduction in accordance with our foregoing conclusions as to this issue which can be given effect in computation under Rule 50. Findings of Fact Issue 3. In defense of the proceeding brought against him by Gollbach and described in our findings of fact with respect to issue 1, petitioner incurred and paid in 1940 legal expense in the amount of $3,929.85. Marie agreed to bear one-third of this expense. On the partnership return of income filed in the name of Siarto & Siarto for the year 1940 the total amount of this legal expense was deducted from income. No deduction for legal expense was taken on the individual return of either petitioner or Marie. Opinion In his amended *372 petition petitioner states that the legal expense was incurred "in protecting his interest in the Ace Tool & Die Company". He contends on brief that such expenses are deductible under section 23 (a) (2) of the Internal Revenue Code as ordinary and necessary expense in connection with the management of property held for the production of income. Respondent contends that the litigation causing the expense fundamentally involved an attack upon petitioner's property rights in the Company and that the amounts must therefore be capitalized to petitioner's proprietary interest in the partnership. We do not agree with respondent's analysis of the nature of the proceeding brought by Gollbach against petitioner for we fail to discover in the bill of complaint or elsewhere in the exhibits pertaining to the litigation any indication that Gollbach was contesting petitioner's ownership of the 50 per cent interest in the business. To the contrary Gollbach affirmatively alleged that petitioner and he were partners of equal interest, and that he himself owned no less than 50 per cent. It seems clear to us that the attack was principally against petitioner's conduct in operating *373 the business of the partnership and in his failure to account for and distribute Gollbach's share of the profits resulting from the business. In our opinion the suit against petitioner was "directly connected with" and "proximately resulted from" his business as a partner within the scope of the decision in Kornhauser v. United States, 276 U.S. 145, which also involved legal expenses in defense of a partner's action for an accounting. See also William A. Falls, 7 T.C. 66, and Isaac P. Keeler, 23 B.T.A. 467. The phraseology of petitioner's pleading may not have been well chosen in view of his present contention but the deductibility of this expense is in issue, the facts are fully set forth in the petition and we think that, on the merits, petitioner should prevail. See Seufert Bros. Co. v. Lucas, 44 Fed. (2d) 528. We therefore hold that petitioner is entitled to deduct the $3,929.85 expended in defense of the litigation brought against him by Gollbach, reduced by the one-third thereof for which he was to be reimbursed by Marie. Decision will be entered under Rule 50. Footnotes
1. Or a party to a business arrangement such as was involved in Claire L. Canfield, 7 T.C. 944↩ [Dec. 15,414].
2. Michigan Statutes, Annotated, Vol. 14. § 20.24. Extent of property rights of a partner. Sec. 24. The property rights of a partner are (1) his rights in specific partnership property. (2) his interest in the partnership, and (3) his right to participate in the management. (C.L. '29, § 9864.) § 20.25. Specific partnership property, tenancy in partnership; rights of possession; assignment of partner's interest; attachment and execution, exemptions; effect of death of partner, dower. Sec. 25. (1) A partner is a co-owner with his partners of specific partnership property holding as a tenant in partnership; (2) The incidents of this tenancy are such that: * * *
(b) A partner's right in specific partnership property is not assignable except in connection with the assignment of the rights of all the partners in the same property. * * *↩